Docket No. 101428.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

_____

SONIA DeLUNA *et al.*, Appellee and Cross-Appellant, v. ELOY BURCIAGA *et al.* (Eloy Burciaga, Appellant and Cross-Appellee).

*Opinion filed October 5, 2006.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Freeman, Fitzgerald, Kilbride, and Garman concurred in the judgment and opinion.

Chief Justice Thomas and Justice Burke took no part in the decision.

**OPINION**

Plaintiffs, Sonia DeLuna, Susanna DeLuna, Griselda DeLuna, and Oscar DeLuna, filed a legal malpractice action in the circuit court of Cook County against defendants, Eloy Burciaga, Barbara Clinite, and Michael Rathsack. Defendants moved to dismiss plaintiffs' fourth amended complaint, arguing that plaintiffs' suit was foreclosed by the applicable statute of repose. The circuit court granted defendants' motions, ruling, *inter alia*, that plaintiffs had failed to adequately allege fraudulent concealment of the cause of action, or equitable estoppel, and, in the absence of such allegations, the statute of repose barred the action. The appellate court reversed the dismissal of plaintiffs' complaint and remanded for further proceedings, finding that the statute of repose would have barred the action, but the allegations of plaintiffs' complaint were sufficient, if proven, to invoke statutory provisions pertaining to fraudulent concealment and general principles of equitable estoppel. 359 Ill. App. 3d 544. We allowed defendant Burciaga's petition for leave to appeal (177 Ill. 2d R. 315), and now we reverse the appellate court in part, affirm in part, and remand this cause to the circuit court for further proceedings consistent with this opinion.

## STATUTES INVOLVED

Section 13–214.3 of the Code of Civil Procedure (Code) provides in pertinent part:

> "(b) An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.
>
> (c) [A]n action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred.
> ***
> (e) If the person entitled to bring the action is under the age of majority or under other legal disability at the time the cause of action accrues, the period of

limitations shall not begin to run until majority is attained or the disability is removed." 735 ILCS 5/13–214.3 (West 2000).

Section 13–215 of the Code states as follows:

"If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13–215 (West 2000).

## BACKGROUND

The factual allegations and procedural history of this case are set forth fully in the appellate court's opinion (359 Ill. App. 3d 544), and will be recited hereafter only as necessary to facilitate an understanding of the issues before the court.

Plaintiffs' mother, Alicia DeLuna, underwent back surgery on April 7, 1986. During that surgery, Dr. Michael Treister allegedly cut through Alicia's left iliac artery, causing severe bleeding and loss of blood pressure. Alicia died the following day.

Alicia's husband, Guadalupe DeLuna, retained Eloy Burciaga in April of 1986 to pursue a medical malpractice action, and incorporated claims, arising from Alicia's death. Burciaga asked attorney Barbara Clinite to assist him. Burciaga, however, was the attorney who communicated directly with the DeLunas, because only Burciaga spoke fluent Spanish. On April 16, 1986, Burciaga and Clinite filed a lawsuit against Dr. Treister and St. Elizabeth's Hospital on behalf of Guadalupe DeLuna acting as the administrator of his wife's estate. Burciaga deliberately filed the lawsuit without attaching an affidavit from a reviewing health-care professional, as required by section 2–622 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2–622), because he wanted to test the constitutionality of that requirement. Burciaga did not inform plaintiffs that he was filing the complaint without the required affidavit. The suit against the hospital was dismissed in

October of 1986; Triester's motion to dismiss with prejudice was granted in February of 1987. The failure to attach a section 2–622 affidavit was the basis for dismissal in both instances.

Attorney Michael Rathsack assisted Burciaga and Clinite in the ensuing appeal. In that appeal, the appellate court reversed the dismissal, holding that section 2–622 was unconstitutional. *DeLuna v. St. Elizabeth's Hospital*, 184 Ill. App. 3d 802 (1989). However, on February 20, 1992, this court reversed the appellate court, upholding the constitutionality of section 2–622. *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57 (1992).

In the spring of 1992, after this court had upheld the constitutionality of section 2–622 and the dismissal of plaintiffs' action, and as the deadline of the legal malpractice statute of repose approached, Burciaga met with the DeLunas and assured them that their medical malpractice case was "going very well."

In November of 1993, Burciaga and Rathsack filed a new lawsuit, this time with the appropriate affidavit attached. However, the circuit court dismissed the cause of action against Treister on the basis of *res judicata* and the suit against St. Elizabeth's on grounds of *respondeat superior*. In November of 1996, the appellate court reversed the dismissals. *DeLuna v. Treister*, 286 Ill. App. 3d 25 (1996). On February 19, 1999, this court affirmed the dismissal of the suit against Treister, but reversed the dismissal of the claim against St. Elizabeth's, and remanded that cause for further proceedings. *DeLuna v. Treister*, 185 Ill. 2d 565 (1999). DeLuna's estate ultimately settled with St. Elizabeth's Hospital in the fall of 2000.

On February 20, 2001, plaintiffs brought this legal malpractice action, eventually filing a fourth amended complaint against Burciaga, Rathsack, and Clinite. Defendants moved to dismiss, pursuant to section 2–619 of the Code (735 ILCS 5/2–619 (West 2000)), arguing that plaintiffs' action had been filed beyond the time limitation set forth in the legal malpractice statute of repose. See 735 ILCS 5/13–214.3(c) (West 2000) (six-year statute of repose). The circuit court

granted the defendants' motions to dismiss, finding that plaintiffs had failed to adequately allege a joint venture, fraudulent concealment, or equitable estoppel, and in the absence of such allegations, the statute of repose barred the action. Rathsack and Clinite subsequently settled with plaintiffs, leaving Burciaga as the only party-defendant in the ensuing appeal.

On appeal, plaintiffs argued, *inter alia*, that the trial court erred in dismissing their legal malpractice action because (1) section 13–214.3(e) of the Code tolled the repose period for two of the plaintiffs (Sonia and Susanna) during their minority; and (2) Burciaga had fraudulently concealed his conduct, thereby tolling the start of the repose period and estopping him from raising the statute of repose as a defense. The appellate court rejected plaintiffs' first contention, but accepted the second.

The court first held that the tolling provision contained in subsection (e) of section 13–214.3 did not toll the statutory period of repose set forth in subsection (c). Noting that "the terms 'statute of limitations' and 'statute of repose' are not interchangeable," the court stated that subsection (e) "expressly tolled" only the "period of limitations," which the appellate court interpreted as a reference solely to the statutory period set forth in subsection (b) of section 13–214.3. 359 Ill. App. 3d at 550. Because the court believed that the phrase "period of limitations," in the context of subsection (e), is not ambiguous, the court declined the plaintiffs' request to consider cases construing the pre-1987 version of the *medical malpractice* statute of limitations and repose (Ill. Rev. Stat. 1985, ch. 110, par. 13–212), which contained language similar to section 13–214.3(e) of the Code. The appellate court acknowledged that courts construing that language had "held that the statute of limitations and the statute of repose for medical malpractice actions were tolled until the minor turned the age of 18." 359 Ill. App. 3d at 550. Nonetheless, since the appellate court found no ambiguity in the legislature's use of the phrase "period of limitations" in section 13–214.3(e), it rejected "plaintiffs' reliance on the rule of *in pari materia* [as] unavailing." 359 Ill. App. 3d at 550.

The court, however, determined that plaintiffs had sufficiently pled fraudulent concealment and equitable estoppel, and thus Burciaga's conduct precluded him from invoking the statute of repose to bar the action. The court held that Burciaga, as a fiduciary, had "a duty to reveal the facts giving rise to the cause of action and that his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an affirmative false representation or act." 359 Ill. App. 3d at 551, citing *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 562 (1980). Though the appellate court believed that Burciaga's failure to disclose the true state of affairs would have been sufficient, alone, to invoke the provisions of section 13–215, the court noted that Burciaga had "affirmatively misled [plaintiffs] in the spring of 1992 by telling them that their case was 'going very well' " when in fact the trial court had dismissed their medical malpractice action and this court had affirmed the dismissal in February of 1992. 359 Ill. App. 3d at 551. Thus, the court held that plaintiff had sufficiently alleged Burciaga's fraudulent concealment of plaintiffs' legal malpractice claim.

Moreover, the court determined that plaintiffs' allegations were adequate to support the application of principles of equitable estoppel as well, holding that the allegations of plaintiffs' complaint indicated plaintiffs had "reasonably relied on Mr. Burciaga's conduct and representation that their medical malpractice suit was going well in forbearing suit until the year 2000." 359 Ill. App. 3d at 552-54. The court noted plaintiffs' averments that: (1) Burciaga handled all communications with plaintiffs, since only he spoke Spanish, and therefore only he could communicate directly with the plaintiffs; (2) Burciaga conducted meetings with plaintiffs in 1989, the spring of 1992, and the summer of 1997, and in each of those meetings he told the plaintiffs that their case was "going very well"; (3) in the 1997 meeting, Burciaga told the plaintiffs that there was no need for him to be in more frequent contact with them about the case and that the frequency of his contacts was adequate; (4) Burciaga never told the plaintiffs in any of those meetings that their medical malpractice case had been filed without the section 2–622 affidavit, that the trial court

˘6˘

had dismissed their medical malpractice action due to the absence of the affidavit, and that the supreme court, in February of 1992, had held that section 2–622 was constitutional and had affirmed the dismissal of their medical malpractice action; and (5) plaintiffs did not learn of these facts until the year 2000, when Rathsack wrote them an explanatory letter. 359 Ill. App. 3d at 552.

The court rejected Burciaga's contention that plaintiffs should be barred from raising the issues of fraudulent concealment or equitable estoppel because they could have discovered the facts allegedly concealed from them, noting that Burciaga's conduct was not such as to put plaintiffs on notice that they should check court files to ascertain the status of their case. 359 Ill. App. 3d at 554. Therefore, the appellate court reversed and remanded for further proceedings. 359 Ill. App. 3d at 554.

ANALYSIS

This appeal presents the following issues for review: (1) whether the statute of repose for legal malpractice is tolled during a plaintiff's minority; (2) whether Burciaga waived arguments that the statute of repose may not be tolled on grounds of fraudulent concealment or equitable estoppel; (3) whether the statute of repose for legal malpractice may be tolled on grounds of fraudulent concealment; (4) whether the statute of repose for legal malpractice may be tolled on grounds of equitable estoppel; and (5) whether, if we hold that the statute of repose for legal malpractice is *not* tolled for fraudulent concealment or equitable estoppel, the legal malpractice statute of repose is rendered unconstitutional. We begin our analysis with a recitation of general principles of review and statutory construction.

A motion to dismiss, pursuant to section 2–619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 413 (2004). Section 2–619 motions present a

question of law, and we review rulings thereon *de novo.* *Borowiec*, 209 Ill. 2d at 413.

The construction of a statute is also a question of law, which we review *de novo. In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000). The primary objective of this court when construing the meaning of a statute is to ascertain and give effect to the intent of the legislature. *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 415 (2006). The plain language of a statute is the most reliable indication of the legislature's objectives in enacting that particular law (*Southern Illinoisan*, 218 Ill. 2d at 415), and when the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation.

However, if the language of a statute is ambiguous, courts may look to tools of interpretation to ascertain the meaning of a provision. *People v. Taylor*, 221 Ill. 2d 157, 163 (2006); *Balmoral Racing Club, Inc. v. Topinka*, 334 Ill. App. 3d 454, 460 (2002). It is appropriate statutory construction to consider similar and related enactments, though not strictly *in pari materia. People v. Masterson*, 207 Ill. 2d 305, 329 (2003); *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 468 (1989). We must presume that several statutes relating to the same subject are governed by one spirit and a single policy, and that the legislature intended the several statutes to be consistent and harmonious. *Masterson*, 207 Ill. 2d at 329; *People ex rel. Killeen v. Kankakee School District No. 11*, 48 Ill. 2d 419, 422 (1971). Where the intent of the legislature is otherwise clear, the judiciary possesses the authority to read language into a statute which has been omitted through legislative oversight. *Masterson*, 207 Ill. 2d at 329. A fundamental principle of statutory construction is to view all provisions of a statutory enactment as a whole. Accordingly, words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute. *Southern Illinoisan*, 218 Ill. 2d at 415. In construing a statute, we presume that the legislature, in its enactment of legislation, did not intend absurdity, inconvenience or injustice. *Southern Illinoisan*, 218 Ill. 2d at 415, citing *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 40 (2001). With these

principles in mind, we first consider whether the statute of repose for legal malpractice is tolled during a plaintiff's minority pursuant to the provisions of subsection (e) of section 13–214.3 of the Code.

Subsection (e) of section 13–214.3 provides, "If the person entitled to bring the action is under the age of majority or under other legal disability at the time the cause of action accrues, the period of limitations shall not begin to run until majority is attained or the disability is removed." 735 ILCS 5/13–214.3(e) (West 2000). The crux of the parties' disagreement on this issue concerns the construction of the phrase "period of limitations," as employed in subsection (e). Defendant Burciaga argues that the term unambiguously refers to a "statute of limitations," and thus tolls only the time period referenced in subsection (b) of section 13–214.3, not the statutory period of repose set forth in subsection (c). Plaintiffs contend that the phrase "period of limitations" refers to both subsections (b) and (c) of section 13–214.3, tolling both time periods until plaintiffs reach the age of majority.

We note, initially, that a statute of repose differs from a statute of limitations in that a statute of limitations governs the time within which lawsuits may be commenced after a cause of action has accrued, while a statute of repose extinguishes the action itself after a fixed period of time, regardless of when the action accrued. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001). A statute of repose gives effect to a policy different from that advanced by a statute of limitations insofar as it is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his or her cause of action. *Ferguson*, 202 Ill. 2d at 311. As will appear hereafter, in our discussion of fraudulent concealment, implementation of the policies underlying these periods of limitation has not always been logically consistent.

We begin our analysis of subsection (e) of section 13–214.3 with the observation that it is included within article XIII of the Code of Civil Procedure, an article entitled "Limitations." Although the time limitations set forth within that article are ones *we* commonly refer to as statutes of "limitations" or "repose," it is noteworthy that the *legislature* rarely employs

that precise terminology to distinguish between the two. In article XIII, only section 13–204 uses the term "repose" within the body of the statute; the only other statute to even mention a "statute of repose" is section 13–213, and that reference is in the title of the section. The terms "statute of limitations" and "statute of repose" do not appear anywhere in section 13–214.3, the section setting forth time limitations on the prosecution of legal malpractice actions. Since both statutes of limitations and statutes of repose are addressed under the semantic umbrella of "Limitations," in the context of article XIII, it would seem that the term "period of limitations," as used in subsection (e) of section 13–214.3, could refer to a "statute of limitations," a "statute of repose," or it could be a comprehensive reference to the time limitations set forth in both subsections (b) and (c) of the statute–what might be considered a "period of limitations" in the broadest sense. The legislature obviously knows the difference between a statute of limitations and a statute of repose, as those terms are used–though sparingly–in article XIII. Therefore, the legislature could have used those terms in subsection (e) to make clear its intent, or it could have placed a reference to subsection (b) in subsection (e) if it had meant the latter to apply only to the former. Either measure would have made plain the legislature's intent. It did neither. Thus, we are left to speculate as to the meaning the legislature attributed to the term "period of limitations" in subsection (e) of section 13–214.3.

With that observation, we do not mean to be overly critical of the legislature, as this court has been guilty of similar literal laxity. In the seminal case of *Anderson v. Wagner*, 79 Ill. 2d 295, 322 (1979), this court referred to a statute of repose, generically, as a "limitation period" and a "statute of limitations." The court did the same thing in *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 453 (1997). In *Bruso*, this court referred to "the general statute of limitations for medical malpractice actions–two years from the date of discovery or four years from the date of the occurrence." *Bruso*, 178 Ill. 2d at 453. Though this court used the term "statute of limitations," the court was obviously referring to both the statute of limitations *and* the general statute of repose. In a subsequent

˘10˘

sentence, the *Bruso* court used the term "extended limitations period" to refer to the extended period of repose applicable to minors. *Bruso*, 178 Ill. 2d at 453.

Suffice it to say that the unqualified and imprecise use of terms like "limitations period" or "period of limitations," when referring to either a statute of limitations or a statute of repose, unnecessarily interjects ambiguity into opinions *and* statutes. Because the term "period of limitations" is ambiguous in the context of section 13–214.3, we look to other tools of interpretation to ascertain the meaning of subsection (e).

We note, first, the location of subsection (e) within the overall structure of section 13–214.3. The legislature chose to place subsection (e), a tolling provision, in a separate subsection *following* subsection (b), which contains the statute of limitations for legal malpractice actions, and subsection (c), which contains the statute of repose. The location of subsection (e), within section 13–214.3, is significant for purposes of statutory construction.

In *Bruso*, this court sought to ascertain the intent of the legislature with respect to subsection (c) of section 13–212 of the Code. Section 13–212 sets forth time limitations on the filing of medical malpractice actions. Subsection (c) of section 13–212 contains a tolling provision, which states as follows: "If the person entitled to bring an action described in this Section is, at the time the cause of action accrued, under a legal disability other than being under the age of 18 years, then the period of limitations does not begin to run until the disability is removed." 735 ILCS 5/13–212(c) (West 1994). This court found the location of subsection (c) significant in concluding that subsection (c) tolled a statute of limitations and general statute of repose set forth in subsection (a) of the statute, as well as a special statute of repose in subsection (b), applicable only to minors. In *Bruso*, this court concluded:

> "Subsection (c) is clearly intended to act as an exception to both subsections (a) and (b). If the legislature had intended legal disability to be an exception for adults only, the logical place for that exception would have been in, or immediately following, subsection (a). The legislature, however, chose to

locate the tolling provision for legal disability in a separate subsection following subsections (a) and (b)." *Bruso*, 178 Ill. 2d at 453.

The observation we made in *Bruso* applies with equal force in this case. If the legislature had intended subsection (e) of section 13–214.3 to apply only to the statute of limitations contained in subsection (b), it could have placed that tolling provision "in, or immediately following," subsection (b). However, the legislature chose, instead, to locate the tolling provision for minors in a separate subsection following subsections (b) and (c). It is, therefore, reasonable to infer that it was meant to apply to both.

Moreover, we have previously acknowledged that language similar to that used in subsection (e) is effective to toll *both* a statute of limitations and a statute of repose. Prior to 1987, the second paragraph of section 13–212 provided:

> "If the person entitled to bring the [medical malpractice] action is, at the time the cause of action occurred, under the age of 18 years, or under legal disability \*\*\*, the *period of limitations* does not begin to run until the disability is removed." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 110, par. 13–212.

In *Antunes v. Sookhakitch*, 146 Ill. 2d 477, 489, 491-92 (1992), and again in *Bruso*, 178 Ill. 2d at 452-53, 457, this court acknowledged that the foregoing provision effectively tolled the statutes of limitations and repose contained in the pre-1987 version of section 13–212. In *Antunes*, this court cited legislative history as an indication that the legislature apparently construed the tolling provision in the same manner. See *Antunes*, 146 Ill. 2d at 491-92. The language employed in subsection (e) of section 13–214.3 is, for all pertinent purposes, identical to that employed in the pre-1987 version of section 13–212. There is no discernible justification for construing subsection (e) differently.

Although the legislature saw fit to amend section 13–212 in 1987, creating an extended statute of repose "where the person entitled to bring the action was, at the time the cause of action accrued, under the age of 18 years," and otherwise

maintaining a tolling provision for those "under legal disability other than being under the age of 18" at the time the cause of action accrued (Ill. Rev. Stat. 1987, ch. 110, pars. 13–212 (b), (c)), the legislature left the provisions of subsection (e) of section 13–214.3 unchanged. We are unwilling to assume that the legislature's inaction is the result of inadvertence. As we stated in *Bruso*, the purpose of tolling provisions for legal disability is to protect the rights of those who are not competent to do so themselves. *Bruso*, 178 Ill. 2d at 454. It has long been the policy of this state that courts should carefully guard the rights of minors (*Ferguson*, 202 Ill. 2d at 313), and that a minor should not be precluded from enforcing his or her rights unless clearly barred from doing so (*Bruso*, 178 Ill. 2d at 454-55).

For the foregoing reasons, we conclude that subsection (e) of section 13–214.3 tolls the statutes of limitations *and* repose set forth in subsections (b) and (c). Therefore, as plaintiffs contend, the legal malpractice action brought on behalf of Sonia and Susanna was timely filed. All four plaintiffs were minors when the alleged malpractice occurred. Oscar was born on March 31, 1974; Griselda was born on May 15, 1975; Susanna was born on May 24, 1980; and Sonia was born on July 3, 1983. Oscar reached the age of 18 years on March 31, 1992, while Griselda, Susanna, and Sonia turned 18 years of age on May 15, 1993, May 24, 1998, and July 3, 2001, respectively. Plaintiffs' legal malpractice action was filed on February 20, 2001. Thus, Sonia had not yet turned 18 when the action was filed, and it was filed within six years of the date on which Susanna reached the age of majority. With the application of the tolling provisions of subsection (e), the plaintiffs' legal malpractice action was timely filed as to Sonia and Susanna, but was still untimely as to Oscar and Griselda, since the action was filed more than six years after they turned 18. Therefore, if Oscar's and Griselda's causes of action are to survive, some other tolling provision or exception must apply, which brings us to the issue of fraudulent concealment.

As a threshold matter, we acknowledge plaintiffs' argument that Burciaga has "waived the contention that section [13–214.3] impliedly bars a court from applying section [13–215] and equitable estoppel to lawyers." Our review of the

briefs and the record indicates that these issues were properly preserved below and have been adequately addressed in the briefs filed with this court; consequently, we reject plaintiffs' procedural default argument.

Section 13–215 provides, "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13–215 (West 2000)). The plain language of section 13–215 refers to "an action," without qualification as to the type of action to which it applies. In that regard it is like section 13–216 (735 ILCS 5/13–216 (West 2000)), which refers, generically, to "an action," excluding the time during which the commencement of "an action"is stayed from "the time limited for the commencement of the action."

Moreover, like section 13–216, the legislature chose to situate section 13–215 *after* a series of other sections–containing both statutes of limitations and statutes of repose–including provisions pertaining to actions for medical malpractice, product liability, acts or omissions in construction practice, criminal acts, acts or omissions in public accounting, and legal malpractice. Utilizing the positional analysis employed in *Bruso*, it can be inferred that section 13–215 applies to all of the preceding sections. See *Bruso*, 178 Ill. 2d at 453. Furthermore, from 1991 until 1996, prior to the time section 13–214.4 was added to article XIII, section 13–215 was actually positioned "immediately following" section 13–214.3, an additional indication that section 13–215 was meant to apply to section 13–214.3. See *Bruso*, 178 Ill. 2d at 453 (reasoning if the legislature had intended a statutory exception to apply to a particular limitation provision, the "logical place for that exception" would have been "in, or immediately following," that limitation provision). Clearly, section 13–214.3 addresses "an action" to which section 13–215 applies.

The question, then, is whether the legislature intended section 13–215 as a tolling provision or exception applicable to statutes of repose, as well as statutes of limitations. We

˘14˘

recognize, at the outset, that section 13–215 speaks in terms of when a person "discovers" that he or she has a cause of action, and that statutes of repose are intended to terminate the possibility of liability after a defined period of time, *regardless of* a potential plaintiff's lack of knowledge of his or her cause of action See *Ferguson*, 202 Ill. 2d at 311. When a person "knew or reasonably should have known" of the circumstances giving rise to his or her cause of action is, therefore, more commonly a consideration in the application of statutes of limitations. See 735 ILCS 5/13–212(a), 13–213(d), 13–214(a), 13–214.2(a), 13–214.3(b) (West 2000). While the use of the term "discovers" in section 13–215 might, arguably, be taken as an indication that section 13–215 was intended as a tolling provision or exception applicable only to *statutes of limitations*, prior statements of this court, relevant actions of the legislature, and basic principles of justice and reason coalesce to refute any such contention.

In *Anderson v. Wagner*, 79 Ill. 2d 295, 321-22 (1979), this court first suggested, in *dictum*, that a statute of repose might be tolled by the fraudulent concealment provisions of section 22 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 23) (now codified as 735 ILCS 5/13–215 (West 2004)) if fraudulent concealment of a cause of action spanned the entire limitation period. Although this court variously referred to the "4-year maximum limitation period," and the "statute of limitations," it is clear from this court's discussion that it was referring to the four-year limitation period of the medical malpractice statute of repose. See *Anderson*, 79 Ill. 2d at 321-22. In *Anderson*, this court concluded its discussion with a caveat and an exhortation to the legislature:

> "By discussing section 22 of the Limitations Act we do not hold that it is applicable in medical malpractice cases. That question is not before us. There are, however, uncertainties concerning the applicability of section 22 of the Limitations Act which we need not resolve in this opinion but to which we invite the attention of the General Assembly." See *Anderson*, 79 Ill. 2d at 322.

˘15˘

Two years after *Anderson*, this court filed its opinion in *Witherell v. Weimer*, 85 Ill. 2d 146 (1981). In *Witherell*, plaintiff argued that the defendant doctors should have been precluded, by the fraudulent concealment provisions of section 22 of the Limitations Act, from raising the medical malpractice *statute of limitations* as a bar to the action. Although *Witherell* involved a statute of limitations, rather than a statute of repose, what was said in *Witherell* is pertinent to our analysis in this case.

In *Witherell*, this court declined to address plaintiff's fraudulent concealment issue, stating:

> "We need not here consider whether section 22 is applicable to medical malpractice cases, a question left unresolved in *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 322, nor whether the alleged conduct of the doctors comes within the scope of that statute. In our opinion, generally accepted principles of equitable estoppel prevent the defendant doctors from urging the limitations bar." *Witherell*, 85 Ill. 2d at 158.

Continuing, this court quoted from the Supreme Court's opinion in *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 232-33, 3 L. Ed. 2d 770, 772, 79 S. Ct. 760, 762 (1959):

> " 'To decide the case we need look no further than the maxim that no man may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations.' " *Witherell*, 85 Ill. 2d at 158.

This court ultimately determined that principles of equitable estoppel applied irrespective of whether defendants *intentionally* misled plaintiff. The court noted, " 'all that is necessary for invocation of the doctrine of equitable estoppel is that the plaintiff reasonably rely on the defendant's conduct or representations in forbearing suit.' " *Witherell*, 85 Ill. 2d at 159, quoting *Bomba v W.L. Belvidere, Inc.*, 579 F.2d 1067, 1071 (7th Cir. 1978). Observing that numerous cases had characterized the doctor-patient relationship as "a fiduciary

one," this court acknowledged that "the relationship between a doctor and his patient is one in which the patient normally reposes a great deal of trust and confidence in the doctor, accepting his recommendations without question." *Witherell*, 85 Ill. 2d at 159. The court concluded: "In the circumstances alleged to be present here, we believe that considerations of fundamental fairness require that the defendant doctors be held estopped by their conduct from now urging that plaintiff should have sooner complained against them for a condition they repeatedly assured her she did not have." *Witherell*, 85 Ill. 2d at 160.

Immediately after the *Witherell* decision, and obviously in response to it (see *Cangemi v. Advocate South Suburban Hospital*, 364 Ill. App. 3d 446, 465 n.4 (2006)), and possibly *Anderson* as well, the legislature amended the medical malpractice statutes of limitations and repose to *specifically* reference the fraudulent concealment statute. The first version of the statute provided, in part, that no medical malpractice action could "be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death except as provided in Section 13–215 of this Act." See Ill. Rev. Stat. 1983, ch. 110, par. 13–212. When the legislature subsequently amended the statute, placing the statute of limitations and a general statute of repose in subsection (a), and an extended statute of repose for minors in subsection (b), the legislature was careful to include references to section 13–215 in each subsection, unequivocally making section 13–215 an exception applicable to *both* the medical malpractice statute of limitations and the statutes of repose. See Ill. Rev. Stat. 1987, ch. 110, pars. 13–212(a), (b).

The amendments to section 13–212 made clear, for the first time, the legislature's intent to apply the provisions of section 13–215 to statutes of repose, notwithstanding any arguable logical inconsistency. Although the legislature had previously stated, in section 13–214 (pertaining to actions premised on acts or omissions in construction), that the "limitations" contained therein would "not apply to *** fraudulent concealment of causes of action" (Ill. Rev. Stat. 1981, ch. 110,

par. 13–214 (f)), the legislature had never before included a specific reference to section 13–215 (or its antecedent, section 22) in a statutory subsection containing a statute of repose.

While some might well point out that a plaintiff's knowledge of his or her cause of action should be irrelevant where a statute of repose is concerned, as a statute of repose is intended to terminate the possibility of liability after a defined period of time, *regardless of* a potential plaintiff's lack of knowledge of his or her cause of action (see *Ferguson*, 202 Ill. 2d at 311), there would be an obvious and gross injustice in a rule that allows a defendant–particularly a defendant who stands in a fiduciary relationship to the plaintiff–to conceal the plaintiff's cause of action and then benefit from a statute of repose. Clearly, the legislature recognized the potential for injustice, and amended section 13–212 accordingly, when this court questioned the applicability of fraudulent concealment provisions in *Anderson*, and hesitated to apply those provisions in *Witherell.*

Subsequent to the amendments, in *Cunningham v. Huffman*, 154 Ill. 2d 398, 407 (1993), this court recognized that the provisions of section 13–215 would apply to a statute of repose. Again, in *dictum*, this court stated "neither [a] statute of limitations nor [a] statute of repose would be triggered" if a physician purposely concealed the discovery of his negligence. This court noted: "In the cases of nondisclosure, the fraudulent concealment provision in section 13–215 of the Code affords the patient five years after discovery of the cause of action to commence the suit." *Cunningham*, 154 Ill. 2d at 407.

Thereafter, in *Morris v. Margulis*, 197 Ill. 2d 28, 37-38 (2001), this court concluded that it did not have to decide whether section 13–215 tolled the *statute of limitations* in section 13–214.3(b), or whether the defendants had fraudulently concealed plaintiff's breach of fiduciary duty claim, because plaintiff had admitted that he knew of the facts forming the basis of his claim shortly after the cause of action arose.

In this case, the issue of section 13–215's applicability to section 13–214.3(c) is squarely presented and has been thoroughly briefed and argued by the parties. We see no reason why section 13–215 should not apply to statutes of

˘18˘

repose, including the statute of repose contained in subsection (c) of section 13–214.3.

In prior decisions, this court has acknowledged that statutes of repose may be tolled by statutory provisions relating to legal disability (see *Bruso*, 178 Ill. 2d at 453, 457; *Antunes*, 146 Ill. 2d at 489, 491-92), and has suggested, in *dictum*, prior to the 1982 amendments of section 13–212, that section 13–215's fraudulent concealment provisions might toll the medical malpractice statute of repose. See *Anderson*, 79 Ill. 2d at 321-22. Subsequently, by incorporating specific references to section 13–215 in section 13–212 of the Code, the legislature has unequivocally indicated that it did indeed intend section 13–215 to be an exception applicable to statutes of repose set forth therein, as this court recognized thereafter in *Cunningham.* See *Cunningham*, 154 Ill. 2d at 407 ("neither [a] statute of limitations nor [a] statute of repose would be triggered" if a physician purposely concealed the discovery of his negligence). There is no reason to believe that the legislature intended to treat attorneys differently than physicians.

In *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 16-17 (2004), we recognized the weighty obligations attorneys undertake in the practice of law, quoting from the preamble to the Rules of Professional Conduct:

> " 'The practice of law is a public trust. Lawyers are the trustees of the system by which citizens resolve disputes among themselves, punish and deter crime, and determine their relative rights and responsibilities toward each other and their government. Lawyers therefore are responsible for *** maintaining public confidence in the system of justice by acting competently and with loyalty to the best interests of their clients; by working to improve that system to meet the challenges of a rapidly changing society; and by defending the integrity of the judicial system against those who would corrupt, abuse or defraud it.' 134 Ill. 2d Illinois Rules of Professional Conduct, Preamble, at 470."

We have held that "[t]he attorney-client relationship constitutes a fiduciary relationship." *In re Winthrop*, 219 Ill. 2d 526, 543 (2006); *Horwitz*, 212 Ill. 2d at 9. As we observed in *Horwitz*, close monitoring of their attorney's conduct would be impossible for most clients, as they are not qualified to undertake that type of monitoring. *Horwitz*, 212 Ill. 2d at 17. Because those who utilize legal services place a great deal of trust in their attorney, the attorney-client relationship presents a significant potential for abuse. *Cripe v. Leiter*, 291 Ill. App. 3d 155, 160 (1997).

Given the nature of the attorney-client relationship, it is inconceivable that the legislature would have intended to limit physicians' reliance upon the medical malpractice statute of repose, when physicians have fraudulently concealed a cause of action from their patients, but to allow attorneys to benefit from the legal malpractice statute of repose, where they have done the same to *their* clients. We cannot imagine what rational policy would possibly be furthered by that differentiation. We must presume that the legislature, in its enactment of legislation, did not intend absurdity or injustice. *Southern Illinoisan*, 218 Ill. 2d at 415. It is our belief that the legislature originally intended that section 13–215 apply to both medical malpractice and legal malpractice limitation enactments, and specifically incorporated references in section 13–212 only when this court expressed doubts concerning the application of fraudulent concealment provisions in that context. Thus, we hold that section 13–215, when applicable, is an exception to the statute of repose contained in section 13–214.3(c) of the Code.

Although our holding today is not inconsistent with our recent decision in *Perlstein v. Wolk*, 218 Ill. 2d 448, 452 (2006), we deem it expedient at this juncture to comment on *Perlstein*, as broad language utilized therein might be misconstrued as inconsistent if not limited to the factual context of that case. In *Perlstein*, a question before us was whether plaintiffs' legal malpractice action was timely filed. In the course of addressing that question, we discussed the consequences of our invalidation of Public Act 89–7 in *Best v. Taylor Machine*

*Works*, 179 Ill. 2d 367 (1997). As we noted in *Perlstein*, prior to the adoption of Public Act 89–7, section 13–214.3 of the Code contained a two-year limitations period and a six-year repose period for attorney malpractice actions (735 ILCS 5/13–214.3(b), (c) (West 1994)), as it does now, but also included an exception to those provisions in subsection (d) of the statute (735 ILCS 5/13–214.3(d) (West 1994)). That exception provided:

> "When the injury caused by the act or omission does not occur until the death of the person for whom the professional services were rendered, the action may be commenced within 2 years after the date of the person's death unless letters of office are issued or the person's will is admitted to probate within that 2 year period, in which case the action must be commenced within the time for filing claims against the estate or a petition contesting the validity of the will of the deceased person, whichever is later, as provided in the Probate Act of 1975." 735 ILCS 5/13–214.3(d) (West 1994).

Public Act 89–7, effective March 9, 1995, removed subsection (d), but otherwise left intact the remaining provisions of section 13–214.3.

In *Perlstein*, plaintiffs' action was untimely filed under a strict application of subsection (d) of section 13–214.3–ignoring for purposes of this discussion other equitable considerations we ultimately took into account–because the action should have been commenced "within the time for filing claims against the estate or a petition contesting the validity of the will of the deceased person, whichever is later." 735 ILCS 5/13–214.3(d) (West 1994). It was not filed within that time frame. However, the action was otherwise timely filed within the applicable statutes of limitations and repose. See 735 ILCS 5/13–214.3(b), (c) (West 1994) Thus, we found it necessary in *Perlstein* to discuss the consequences of our invalidation of Public Act 89–7 and whether subsection (d) still applied.

In the course of our discussion in *Perlstein*, we stated, with the passage of Public Act 89–7, "a two-year limitations period and a six-year repose period applied–*without exception*–to all

attorney malpractice actions." (Emphasis added.) *Perlstein*, 218 Ill. 2d at 452. That broad statement must be limited to the factual context in which it was made, *i.e.*, a legal malpractice action based upon negligent preparation of a will. This court did not discuss the applicability of section 13–215 or 13–214.3(e), or even mention those sections, which were not at issue. Given the facts before this court, our unqualified statement in *Perlstein* is correct insofar as there would have been no applicable internal "exceptions" in section 13–214.3 after the effective date of Public Act 89–7, had it withstood constitutional scrutiny. However, the statement does not apply outside of its factual context, it does not address the relationship between sections 13–214.3 and 13–215, and it should not be read to confuse "exceptions," such as those in section 13–215 and subsection (d) of section 13–214.3, with *tolling provisions*, such as the one found in subsection (e) of section 13–214.3. With that clarification, we consider whether plaintiffs have pled sufficient facts to take advantage of the fraudulent concealment provisions of section 13–215.

In *Clay v. Kuhl*, 189 Ill. 2d 603, 613 (2000), this court noted that fraudulent concealment will "toll" a limitations period if a plaintiff pleads and proves that fraud prevented discovery of the cause of action. In *Clay*, the court stated, "[a]s a general matter," a plaintiff alleging fraudulent concealment must " 'show affirmative acts by the fiduciary designed to prevent the discovery of the action.' " *Clay*, 189 Ill. 2d at 613, quoting *Hagney v. Lopeman*, 147 Ill. 2d 458, 463 (1992). However, in *Hagney*, this court quoted from *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 562 (1980), recognizing that affirmative acts or representations on the part of a fiduciary are not always necessary:

> " ' "[i]t is the prevailing rule that, as between persons sustaining a fiduciary or trust or other confidential relationship toward each other, the person occupying the relation of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff (the other party), and that his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud

> at law as an actual affirmative false representation or act; and that mere silence on his part as to a cause of action, the facts giving rise to which it was his duty to disclose, amounts to a fraudulent concealment ***." ' " *Hagney*, 147 Ill. 2d at 463, quoting *Kenroy*, 78 Ill. 2d at 562, quoting Annot., 173 A.L.R. 576, 588 (1948).

See also *Crowell v. Bilandic*, 81 Ill. 2d 422, 428 (1980) ("It is well established that fraudulent concealment sufficient to toll a statute of limitations requires affirmative acts or representations designed to prevent discovery of the cause of action"; however, there is "a widely recognized exception to this general rule in those instances when the existence of a fiduciary relationship is clearly established").

Although this court, in *Hagney*, went on to insist upon strict pleading requirements as a prerequisite to reliance upon fraudulent concealment provisions–stating that plaintiffs must allege "the trust which was reposed in the fiduciary prevented the discovery of the cause of action"within the limitations period (*Hagney*,147 Ill. 2d at 465)–the court did not repudiate the principles espoused in *Kenroy.*

Indeed, four years after *Hagney*, this court implicitly reaffirmed the principles expressed in *Kenroy* when the court rendered its decision in *Connick v. Suzuki Motor Co.,* 174 Ill. 2d 482 (1996). In *Connick*, this court held, in order to state a claim of fraudulent concealment, "a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick*, 174 Ill. 2d at 500. This court explained:

> "A duty to disclose a material fact may arise out of several situations. First, if plaintiff and defendant are in a fiduciary or confidential relationship, then defendant is under a duty to disclose all material facts. [Citations.] Second, a duty to disclose material facts may arise out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Connick*, 174 Ill. 2d at 500.

Collectively, *Kenroy*, *Hagney*, and *Connick* stand for the proposition that a *fiduciary* who is silent, and thus fails to fulfill his duty to disclose material facts concerning the existence of a cause of action, has fraudulently concealed that action, even without affirmative acts or representations. We reaffirm and apply that principle today.

As we have previously noted, "[t]he attorney-client relationship constitutes a fiduciary relationship" (*In re Winthrop*, 219 Ill. 2d at 543; *Horwitz*, 212 Ill. 2d at 9), one in which the client is generally not qualified to monitor the technical aspects and consequences of the attorney's conduct. *Horwitz*, 212 Ill. 2d at 17. Thus, we have imposed an ethical obligation upon members of the bar to keep clients apprised of major developments in their cases. See *In re Smith*, 168 Ill. 2d 269, 280 (1995) (pursuant to Rule 1.4 (a) of the Illinois Rules of Professional Conduct, attorneys have an ethical obligation to keep clients informed and apprised of the status of their cases). As our appellate court has observed, those who utilize legal services place a great deal of trust in their attorneys; consequently, the attorney-client relationship presents a significant potential for abuse. See *Cripe*, 291 Ill. App. 3d at 160. When, in the course of his or her professional dealings with a client, an attorney unnecessarily exposes a client to a risk of loss or otherwise jeopardizes the pecuniary interests of the client, the attorney has breached a duty to the client. *In re Rosin*, 118 Ill. 2d 365, 388 (1987), quoting *In re Saladino*, 71 Ill. 2d 263, 276 (1978). With these observations and principles in mind, we turn to the allegations of plaintiffs' complaint.

The alleged negligence here involved Burciaga's filing of the underlying medical malpractice action without attaching an affidavit as required by section 2–622, and his failure to ensure that the dismissal of the action against Dr. Treister was without prejudice. Those acts occurred in 1986 and 1987, respectively. Therefore, in the absence of an applicable tolling provision or exception, the six-year statute of repose would have expired at the latest by 1993, eight years prior to the filing of this legal malpractice action in 2001. Plaintiffs contend that they have

pled facts sufficient to bring them within the purview of section 13–215, and we agree.

In their fourth amended complaint, plaintiffs allege that Burciaga was retained by the special administrator of Alicia DeLuna's estate to represent the plaintiffs in a medical-malpractice/wrongful-death action against Dr. Treister and St. Elizabeth's Hospital. Thus, a fiduciary relationship existed between Burciaga and the plaintiffs.

We note, as a general rule, an attorney owes a duty only to one who is his client; however, an exception to the general rule has been recognized in limited circumstances when an attorney is hired by a client specifically for the purpose of benefitting a third party. See *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 174-75 (1997); *Pelham v. Griesheimer*, 92 Ill. 2d 13, 21 (1982); *In re Estate of Lis*, 365 Ill. App. 3d 1, 14-18 (2006). The key factor to be considered in determining whether a duty is owed to a third party is whether the attorney acted at the direction of, or on behalf of, the client for the benefit of the third party. *Schwartz*, 177 Ill. 2d at 175, citing *Pelham*, 92 Ill. 2d at 21. It is here alleged that Burciaga was retained to prosecute a medical-malpractice/wrongful-death action. A wrongful-death action, if filed, must "be brought by and in the names of the personal representatives of [the] deceased person *** for the exclusive benefit of the surviving spouse and next of kin." 740 ILCS 180/2 (West 2004). Plaintiffs, as the surviving children of Alicia DeLuna, were her next of kin, and the wrongful-death action was indisputably brought for their benefit. Under the circumstances, we hold that the requirement of *Schwartz* and *Pelham* is met, and Burciaga did indeed owe plaintiffs a fiduciary duty.

In their complaint, plaintiffs further allege that Burciaga, their fiduciary, failed to reveal pertinent facts giving rise to the legal malpractice action at various stages of his representation. Among other things, he failed to inform plaintiffs that he was intentionally filing the underlying medical malpractice action without the requisite section 2–622 affidavit in order to test the constitutionality of the statute, thereby depriving them of the opportunity to make informed decisions regarding their

representation, and unnecessarily jeopardizing the viability of their cause of action.

Plaintiffs also allege that Burciaga *affirmatively* misled them in the spring of 1992 when he told them, in an office conference attended by Oscar, that their case was "going very well." Contrary to Burciaga's misrepresentation, as of February 25, 1987, the circuit court had in fact dismissed their medical malpractice action as to both defendants, due to the absence of the required affidavit, and this court had affirmed the dismissal on February 20, 1992. In effect, the case against Dr. Treister was over. The result was adverse to plaintiffs and, with this court's affirmance of the dismissal, conclusive; however, Burciaga failed to disclose material facts bearing upon the procedural status of plaintiffs' case, at a meeting where such a disclosure should have been made, and at a time when plaintiffs could have taken some action against Burciaga without running afoul of the statute of repose.

Plaintiffs complaint further alleges that in a subsequent office conference, attended by Oscar and Griselda in the summer of 1997, Burciaga again told them that the case was "going very well" and that "there was no need for him to be in more frequent contact with them about the case." According to the allegations of plaintiffs' complaint, it was not until March 24, 2000, that attorney Michael Rathsack sent a letter to Oscar DeLuna, informing the DeLunas, for the first time, that Burciaga had used their medical malpractice action to test the constitutionality of section 2–622, that their medical malpractice action against Dr. Treister was barred, and that they might have an action for legal malpractice against Burciaga.

In their complaint, plaintiffs note that Burciaga "handle[d] all communications with the DeLunas since only he spoke Spanish and therefore only he could communicate directly with the DeLunas." The inescapable import of that assertion is that the DeLunas could not speak English. Plaintiffs further alleged that they "relied in good faith on Burciaga's reassurances and assertions that the case was going very well as being the truth," and, consequently, they did not investigate the status of their case.

We conclude that plaintiffs' allegations, if proven, are sufficient to establish Burciaga's fraudulent concealment of facts supporting plaintiffs' legal malpractice cause of action. Those allegations indicate that Burciaga, their fiduciary, pursued a course of conduct intended to conceal the facts giving rise to their legal malpractice action by assuring plaintiffs, in the spring of 1992, as the deadline of the legal malpractice statute of repose approached, that their case was "going very well," by failing to advise them, at that meeting, of the true status of their case, by again offering assurances, during a meeting in the summer of 1997, that the case was "going very well," and by further advising plaintiffs that there was no need to contact him more frequently about the status of the case.

Moreover, we find the allegations of plaintiffs' complaint sufficient to meet the pleading requirements set forth in *Hagney* assuming, *arguendo*, that those requirements are necessary under the facts of this case. See *Barratt v. Goldberg*, 296 Ill. App. 3d 252, 258 (1998) (noting *Hagney*'s pleading requirement and distinguishing *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 251-53 (1994), on the basis that the "defendant law firm in that case made continuous reassurances to the plaintiff, which delayed plaintiff's filing of her suit"). Plaintiffs in this case allege that they "relied in good faith on Burciaga's reassurances and assertions that the case was going very well as being the truth," and, consequently, they did not investigate the status of their case. Given Burciaga's assurances, and the fact that the plaintiffs in this case obviously could not speak English, and may well have been unable to read it, we do not believe that plaintiffs were required to conduct their own courthouse investigation. Because of language barriers, they were even less qualified than "most clients *** to undertake that type of monitoring." See *Horwitz*, 212 Ill. 2d at 17. Moreover, in light of Burciaga's assurances and reassurances, they had no reason to think such an investigation was necessary. *Cf. Jackson Jordan, Inc.*, 158 Ill. 2d at 251-53 (applying principles of equitable estoppel to a statute of limitations defense in a legal malpractice case

where "the client was lulled into a false sense of security by the firm's soothing reassurances and advice").

Pursuant to the provisions of section 13–215, plaintiffs had five years after discovery of their causes of action to file their legal malpractice suit. 735 ILCS 5/13–215 (West 2000). They discovered their causes of action against Burciaga when, in March of 2000, Rathsack informed them by letter of the true circumstances surrounding their case. They filed their legal malpractice action in February of 2001, well within the five-year period. Accordingly, we find that the allegations of plaintiffs' complaint, if proven, support a finding that Oscar's and Griselda's legal malpractice action was timely filed within the limitations period set forth in section 13–215 of the Code.

The result would be no different if we were to analyze this case using principles of equitable estoppel. A party claiming estoppel must demonstrate that: (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when that party decided to act, or not, upon the representations; (4) the other person intended or reasonably expected that the party claiming estoppel would determine whether to act, or not, based upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof. *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313-14 (2001). As this court noted in *Jackson Jordan*:

> " ' "[I]t is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intend by its conduct to induce delay. [Citations.] Rather, all that is necessary for invocation of the doctrine of equitable estoppel is that the plaintiff reasonably rely on the defendant's conduct or representations in forbearing suit." ' " *Jackson Jordan, Inc.*, 158 Ill. 2d at 252, quoting

*Witherell*, 85 Ill. 2d at 159, quoting *Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067, 1071 (7th Cir. 1978).

In *Jackson Jordan*, this court was confronted with circumstances which were, for all pertinent purposes, indistinguishable from those now before us. This court held that principles of equitable estoppel barred the defendant law firm from raising a statute of limitations as a defense in that legal malpractice action. Given the facts of this case, in particular the vulnerability of the plaintiffs and the blatantly false status report Burciaga gave them in the spring of 1992, one might well argue that the impetus and justification for applying equitable estoppel in this instance would be even greater than in *Jackson Jordan.*

However, in light of our holding on the issue of fraudulent concealment, and our analysis in that regard, which either overtly or implicitly addresses and subsumes considerations pertinent to the doctrine of equitable estoppel, we find it unnecessary to hold that principles of equitable estoppel apply in this case. It is our prerogative to forgo the determination of issues unnecessary to the outcome of the case. *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 509 (2006). Moreover, there is no need to address plaintiffs' constitutional issue. Since we have held that the allegations of plaintiffs' complaint are sufficient, if proven, to establish fraudulent concealment of their causes of action, plaintiffs' constitutional argument is now moot.

Before we conclude, we wish to take this opportunity to encourage the legislature to undertake a comprehensive review of article XIII provisions pertaining to statutes of limitations and repose. Greater specificity and uniformity in that area of the Code would obviate the need for courts to so often speculate as to the General Assembly's intent.

In sum, we hold that plaintiffs' legal malpractice action was timely filed as to Sonia and Susanna because subsection (e) of section 13–214.3 tolled the legal malpractice statute of repose. Further, we find that the allegations of plaintiffs' complaint are sufficient, if proven, to establish fraudulent concealment of plaintiffs' causes of action by Burciaga. Thus, assuming that

ˇ29ˇ

plaintiffs can prove the allegations of their complaint, the action was timely filed as to Oscar and Griselda as well. For the foregoing reasons, we affirm in part and reverse in part the judgment of the appellate court, reverse the judgment of the circuit court, and remand this cause to the circuit court for further proceedings consistent with this opinion.

*Appellate court judgment affirmed
in part and reversed in part;
circuit court judgment reversed;
cause remanded.*

CHIEF JUSTICE THOMAS and JUSTICE BURKE took no part in the consideration or decision of this case.