2023 IL App (1st) 211119

SIXTH DIVISION
January 13, 2023

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

No. 1-21-1119

| | | |
|---|---|---|
| WILLIAM P. DALESSANDRO, ANTHONY DALESSANDRO, and MICHELLE C. DALESSANDRO, | ) ) ) | Appeal from the |
| Plaintiffs-Appellants, | ) ) | Circuit Court of Cook County. |
| v. | ) ) | No. 2017 CH 14705 |
| JUDITH QUINN-DALESSANDRO and CHUHAK & TECSON, P.C., | ) ) ) | Honorable Caroline Kate Moreland, |
| Defendants | ) ) | Judge Presiding. |
| (Chuhak & Tecson, P.C., Defendant-Appellee). | ) ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices C.A. Walker and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs William P., Anthony, and Michelle Dalessandro are the adult children of the decedent, Dr. William Dalessandro (William). Following their father's death and their discovery that they no longer stood to inherit a substantial portion of his assets, plaintiffs sued their stepmother, defendant Judith Quinn-Dalessandro, individually and as the trustee of their father's trust. Plaintiffs alleged that in the final years of his life, Judith exerted undue influence over William, who suffered from dementia, to alter his trust and make her the beneficiary of substantially all of his considerable assets. Plaintiffs alleged that their father's signature on the

amended and restated trust document was a forgery and sought as their sole remedy the invalidation of that instrument. Their complaint was filed one week before the deadline established by the probate court for the filing of claims against William's estate.

¶ 2    Over a year later, plaintiffs amended their complaint to add claims against the law firm that assisted William and Judith in preparing their estate documents, defendant Chuhak & Tecson, P.C. (Chuhak), for breach of fiduciary duty, professional negligence, aiding and abetting Judith's wrongful conduct, and civil conspiracy. The circuit court granted the firm's motion to dismiss the claims against it as untimely under section 13-214.3(d) of the Code of Civil Procedure (Code) (735 ILCS 5/13-214.3(d) (West 2016)). The court rejected plaintiffs' argument that the amended complaint related back to the filing of their initial complaint, on the basis that it would not have been objectively evident to Chuhak from plaintiffs' initial allegations that, but for a mistake of identity, it should have been named as a defendant. The court denied plaintiffs' motion to reconsider that dismissal, concluding both that plaintiffs' new arguments based on fraudulent concealment and equitable tolling were forfeited and that plaintiffs had failed to establish that the court incorrectly applied the law regarding the relation-back doctrine.

¶ 3    For the reasons that follow, we affirm the court's dismissal of these claims as untimely.

¶ 4                                I. BACKGROUND

¶ 5    Plaintiffs are the three children of the decedent, William, who retired in 2005 after a career as a successful cardiologist. Following his divorce in 1983 from plaintiffs' mother, William hired Judith as a live-in nanny for plaintiffs, who at the time were seven, five, and two years old. Until approximately 2003, one or more of the children still lived with William in the family home. Judith stayed on after their departure as a caregiver to William, who was then 79 years old, and in 2008 William and Judith married. William died on December 24, 2016, at the age of 92.

¶ 6                  A. Plaintiffs' Initial Communications With Chuhak

¶ 7     On January 19, 2017, Mitchell Weinstein, a lawyer at Chuhak, sent a letter to plaintiffs stating, "I am one of the attorneys that worked with your father on his estate plan documents, since 2010." Mr. Weinstein explained that his firm represented Judith—as the executor of William's estate and as his successor trustee—and enclosed a copy of the "Second Amendment and Restatement of Trust," executed by William on May 27, 2012 (the 2012 Amended Trust). Mr. Weinstein assured plaintiffs that, as the sole trustee and beneficiary, William was, "during his lifetime, in total control over all trust assets." He explained to them that the trust was comprised of two separate trusts, a marital trust and a family trust, and that Judith had "an unlimited right of withdrawal as to any assets in the marital trust" and could also withdraw from the family trust during her lifetime "for her education, health, maintenance and support."

¶ 8     Although "all of the trusts created by virtue of [William's] death [were] set up for the benefit of Judy," Mr. Weinstein went on, she was willing to allow $4 million to pass to plaintiffs if they agreed not to challenge their father's estate documents. Mr. Weinstein also pointed out that Judith could, at her sole discretion, provide them with annual gifts of up to $14,000 without incurring gift taxes. Mr. Weinstein explained that trust assets did not pass through probate and told plaintiffs he did not believe that a probate of William's will would be necessary, though he noted that this could change if assets were found in William's name. He encouraged them to be patient, noting that estate tax returns would need to be filed and that "these things take time *** 1-2 years, and sometimes longer than that."

¶ 9     Plaintiffs retained counsel and, three months later, on April 11, 2017, wrote Mr. Weinstein back asking him to immediately provide them with "the original William Dales[s]andro Trust dated September 1984, the First Restatement and Second Restatement." Enclosed with Mr.

Weinstein's response two days later was another copy of the 2012 Amended Trust, which Mr. Weinstein maintained was "the only pertinent document," as well as certain pages from the original William Dalessandro Declaration of Revocable Trust Dated September 12, 1984 (the 1984 Trust) and the first restatement, which he explained were included merely to demonstrate that "those documents exist[ed], and that [William] had the right to amend, restate, and revoke the trust" under both documents.

¶ 10    Plaintiffs have alleged that their counsel thereafter "made an appointment with Chuhak to obtain a complete copy of the documents" and, on April 18, 2017, were briefly seen at Chuhak's offices before being sent away. They maintain that during this brief meeting Chuhak refused to provide complete copies of William's estate planning documents or describe William's assets.

¶ 11                                B. Probate Proceedings

¶ 12    Judith, represented by Chuhak, initiated probate proceedings on April 18, 2017. *In re* Estate of Dalessandro, No. 2017-P-2542 (Cir. Ct. Cook County). William's last will and testament was admitted to probate on May 5, 2017, and pursuant to section 8-1 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/8-1(a) (West 2016)), the deadline to contest the will was six months later, on November 5, 2017. Letters of office appointing Judith as the representative of William's estate were also issued on May 5, 2017, and on May 25, 2017, a statutory notice of publication was filed announcing November 11, 2017, as the deadline for bringing claims against the estate.

¶ 13                                C. Plaintiffs' Initial Complaint

¶ 14    Plaintiffs filed their initial complaint in this matter on November 3, 2017. They asked the circuit court to set aside the 2012 Amended Trust as the product of forgery, undue influence, breach of fiduciary duty, and fraud and named Judith, as trustee and a beneficiary of the trust, as the sole defendant. Plaintiffs alleged that beginning in approximately 2008, Judith began limiting

4

William's contact with them and persuaded him to stop seeing medical providers or taking prescribed medications, something plaintiffs insisted their father, as a former cardiologist, would not have done absent her undue influence. They alleged that Judith also informed Anthony in 2014 or 2015 that William had decided to sell the condominium Anthony was living in, something William had told plaintiffs he never intended to do.

¶ 15    Plaintiffs further alleged that at the time the 2012 Amended Trust was executed, William suffered from Alzheimer's disease and Judith was his nurse and caregiver. They alleged "on information and belief," that Judith "transported [William] to [his] attorneys' office for purposes of changing his trust documents to her advantage" and that the resulting amendment to the trust gave "all or substantially all of [William's] assets to [Judith]." They alleged that William's signature on the 2012 Amended Trust was "not his signature" and that the document was "forged." Later in the complaint, however, they alleged that William's signature was "*either* (a) obtained at a time when [he] did not have the capacity to sign said document; (b) was executed by a third party ***; [or] (c) was obtained in order to leave all or substantially all of the deceased's assets to [Judith]." (Emphasis added.) Plaintiffs asserted that, "with the intent to defraud [them] of their share of the Trust," Judith "used her influence over [William] to change his Trust at a time when [she] knew [he] did not have the mental capacity" to do so.

¶ 16                    D. Plaintiffs' First Amended Complaint

¶ 17    Plaintiffs retained new counsel and on March 6, 2018, were granted leave to file a "Verified Amended Complaint" asserting additional causes of action arising from their allegations but naming no additional defendants. In that amended complaint, filed on April 20, 2018, plaintiffs sought damages from Judith individually and not just the invalidation of the trust; reframed their fraud claims as ones for declarative relief; and added claims for lack of capacity, tortious

interference with an expected inheritance, unjust enrichment, a constructive trust, an accounting, and punitive damages. Plaintiffs also added a significant number of new substantive allegations detailing their relationships with their father, Judith's history with the family, and Judith's role as William's caretaker and eventual spouse. They described William's trust planning prior to Judith's involvement, noting that when William first executed the 1984 Trust, that document named them as sole beneficiaries and a corporate fiduciary as William's successor trustee. Plaintiffs maintained that William had always told them to "pursue careers without regard to income or wealth" because he intended to leave all or most of his assets to them when he died.

¶ 18     Plaintiffs also alleged more specifics regarding William's mental health in their amended complaint. They alleged that by 2007, when he was 83 years old, William's "mental condition had begun to severely decline," he could "no longer walk anywhere alone because he would become lost, disoriented and confused," and he could no longer operate a motor vehicle. According to plaintiffs, William stopped giving them annual gifts of money in 2008; by 2009, he was exhibiting "signs of full dementia," including an "inability to recall the age and professions of his children or where his children were residing"; and by 2010, his doctor had prescribed him medication for dementia.

¶ 19     Plaintiffs alleged that as their nanny Judith had "attempted to alienate" William from them and, in particular, resented and was cruel to Michelle. They asserted that in 2008, when Judith was 54 years old and William was 84, she threatened to stop caring for him if he did not marry her.

¶ 20     Finally, plaintiffs alleged that Judith "brought [William] to Chuhak for the purpose of amending the 1984 Trust," on February 22, 2010, July 11, 2011, and May 27, 2012. According to plaintiffs, the resulting amendments, which were "drafted by Chuhak" and "executed before employees of Chuhak," altered the distribution plan for the trust to Judith's benefit and to their

6

detriment. Plaintiffs alleged that the execution of each of these amendments was "not an independent act of [William's]." Someone else had signed William's name on the 2012 amendment, plaintiffs insisted, and they alleged on information and belief that that person had been Judith.

¶ 21                               E. The Subpoena for Chuhak's Records

¶ 22     Two months later, on May 10, 2018, plaintiffs served Chuhak with a subpoena for records. Chuhak moved to quash the subpoena, arguing both that it was premature where plaintiffs had not first sought the same documents from Judith and that many of the documents requested were privileged. The circuit court denied the motion but agreed to stay discovery until it had ruled on Judith's motion to dismiss the first amended complaint. That motion was denied on October 29, 2018, and Chuhak produced documents in response to plaintiffs' subpoena on December 24, 2018.

¶ 23     Chuhak's document production included cover letters from the firm to William and Judith enclosing signed versions of the 2010-12 trust documents and amendments, what appear to be unsigned drafts of those documents, an estate evaluation, documents relating to real estate owned by William and Judith, and various tax documents and bank records. A more detailed picture of how the trust terms evolved over time can be gleaned from these documents, along with the original 1984 Trust, which was produced later in discovery.

¶ 24     The terms of the 1984 Trust originally called for the trust principal to be divided equally into separate trusts created for each plaintiff. When each child reached 30 years of age, he or she could withdraw, by written request to the trustee "all or any portions of the principle," subject to certain limitations until the beneficiary reached the age of 40. William named himself as trustee and Harris Trust and Savings Bank as his successor trustee.

¶ 25     The trust apparently remained unchanged until March 11, 2008. Chuhak represented during

discovery negotiations that it had not prepared and possessed no copy of that amendment.

¶ 26    On February 22, 2010, the trust was amended and restated to name Judith and the Northern Trust Company of Chicago as William's successor cotrustees. Upon William's death, the trustees were directed to pay claims against his estate, set $20 million aside in a family trust, and allocate all remaining trust assets to a marital trust paid to William's spouse in installments during the spouse's lifetime. From the family trust, a one-time distribution of $250,000 was to be made to each of William's children and the remaining assets held in separate trusts for each child.

¶ 27    The trust was amended again on July 11, 2011. This amendment reduced the amount of the family trust from $20 million to $15 million and called for separate trusts to be established for Michelle ($250,000) and for William's grandchildren ($3 million), with the remainder of the assets in the family trust held for William P. and Anthony.

¶ 28    And finally, the 2012 Amended Trust, described above, made clear that both the marital trust and the family trust were, in Mr. Weinstein's words, "set up for the benefit of Judy." It gave her an unlimited right to withdraw assets from the marital trust and the added ability to withdraw from the family trust for her own health, education, maintenance, and support.

¶ 29    F. Plaintiffs' Second Amended Complaint and Chuhak's Motion to Dismiss

¶ 30    Plaintiffs' second amended complaint, filed on January 3, 2019, contained the same substantive allegations as their first amended complaint but added claims against Chuhak for breach of fiduciary duty, professional negligence, aiding and abetting Judith's wrongful conduct, and civil conspiracy.

¶ 31    Chuhak moved to dismiss these claims as untimely on March 19, 2019. The firm noted that, pursuant to section 13-214.3(d) of the Code, any party claiming injury as a result of the estate-planning services Chuhak rendered to William was required to bring such claims against the firm

within the time for filing a petition contesting the validity of William's will or within the time for filing claims against his estate, whichever was later. 735 ILCS 5/13-214.3(d) (West 2016). Here, those dates were November 5, 2017, and November 11, 2017, respectively. Because plaintiffs did not assert their claims against Chuhak until January 3, 2019, Chuhak argued the claims were time-barred and should be dismissed pursuant to section 2-619 of the Code (*id.* § 2-619(a)(5)).

¶ 32      Plaintiffs argued in response that their claims against Chuhak were timely because, under the relation-back doctrine codified at section 2-616(d) of the Code (*id.* § 2-616(d)), Chuhak knew or should have known from the allegations in plaintiffs' initial, timely complaint that but for a mistake of identity, the firm itself would have been named as a defendant for aiding and abetting Judith's actions. Plaintiffs further argued that until forced to produce documents in response to plaintiffs' subpoena, Chuhak had "purposefully withheld information relating to the various trust documents *** in an attempt to conceal its participation in [Judith]'s scheme and conspiracy."

¶ 33      In its reply in support of dismissal, Chuhak pointed out that the only relief plaintiffs' sought in their initial complaint was the invalidation of the 2012 Amended Trust. Plaintiffs had not alleged any wrongdoing by an attorney who provided William and Judith with estate-planning services. Chuhak insisted that based on these allegations, it could not reasonably have thought that it would have been named as a defendant but for a mistake regarding its identity.

¶ 34      Plaintiffs argued in their sur-reply that, while they themselves "did not have knowledge of the extensive role Chuhak played in the underlying transactions that led to the causes of action against *** Judith until [they] received the 750 pages of documents" Chuhak produced in response to plaintiffs' subpoena, the lawyers at Chuhak "knew, or should have known, [the firm] was exposed to liability" because the changes to the trust were drastic and because "Judith could not have carried out her scheme without using sophisticated estate planning attorneys." Plaintiffs noted

that the six-month limitations period established in section 13-214.3(d) of the Code was overcome by virtue of the relation-back doctrine, but that "even if the 2-year statute of limitations applied," the discovery rule would place the statute of limitations at December 24, 2020, when Chuhak finally responded to plaintiffs' subpoena.

¶ 35    In a final filing, Chuhak argued that the discovery rule, which is incorporated into the two-year statute of limitations that ordinarily applies to claims against attorneys, did not apply and could not overcome the statute of repose established by section 13-214.3(d) of the Code. Chuhak reiterated that plaintiffs' initial complaint evinced a conscious decision to challenge the validity of the 2012 Amended Trust without bringing corresponding claims for damages, against Judith or anyone else, and that the firm could not have reasonably known from that filing that but for a mistake of identity a claim for damages would have been brought against the firm.

¶ 36    The circuit court granted Chuhak's motion to dismiss on July 15, 2019. "All of the claims and allegations in the original Complaint relate[d] to actions and inactions taken by Judith," the court noted, and there was "no allegation anywhere *** that even implie[d] an action, omission, cause of action, or theory of recovery against the law firm that prepared the Trust documents." In the court's view, Chuhak's offices were simply alleged to be the location where Judith's tortious acts occurred.

¶ 37    The court denied plaintiffs' motion for reconsideration on December 23, 2019, concluding both that plaintiffs had failed to demonstrate that the court incorrectly applied the law governing the relation-back doctrine and that they had forfeited their fraudulent concealment and equitable tolling arguments by not raising them sooner.

¶ 38                                    II. JURISDICTION

¶ 39    Our jurisdiction over this appeal is pursuant to Illinois Supreme Court Rule 304(a) (eff.

Mar. 8, 2016). The circuit court granted Chuhak's motion to dismiss the claims asserted against it in plaintiffs' second amended complaint as untimely on July 15, 2019, and denied plaintiffs' motion to reconsider that ruling on December 23, 2019. On July 6, 2020, Chuhak moved for a finding under Rule 304(a) that there was no just reason to delay enforcement or appeal of those orders and—in an omnibus discovery order entered on October 2, 2020—the circuit court made the requested finding. Plaintiffs moved the court to reconsider its order, however, arguing among other things that the Rule 304(a) finding was premature. Although the court subsequently withdrew the October 2, 2020, order, struck plaintiffs' motion as moot, and reset the matter for decision at a later date, on August 10, 2021, it entered a new order finding no just reason to delay enforcement or appeal of the orders that are at issue in this appeal. Plaintiffs timely filed their notice of appeal on September 9, 2021.

¶ 40                                    III. ANALYSIS

¶ 41     The circuit court dismissed plaintiffs' claims against Chuhak under section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)). A motion brought pursuant to this section "admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. Our review of the grant or denial of such a motion is *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993).

¶ 42     One ground for dismissal under section 2-619 is "[t]hat the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2018). Here, the timeliness of the dismissed claims is governed by section 13-214.3 of the Code, which establishes the time in which to file claims against lawyers for acts or omissions in their performance of professional legal services. 735 ILCS 5/13-214.3 (West 2016). Subsection (d) applies where, as here, "the injury

caused by the act or omission does not occur until the death of the person for whom the professional services were rendered." *Id.* § 12-214.3(d). In such cases, an action "may be commenced within 2 years after the date of the person's death unless letters of office are issued," or "the person's will is admitted to probate within that 2 year period." *Id.* Where those circumstances are present, "the action must be commenced within the time for filing claims against the estate or a petition contesting the validity of the will of the deceased person, whichever is later, as provided in the Probate Act of 1975." *Id.*

¶ 43    Here, William's last will and testament was admitted to probate on May 5, 2017. Letters of office were issued to Judith that same day, and a statutory notice of publication announced November 11, 2017, as the deadline for bringing any claims against William's estate. This was in accordance with section 18-3 of the Probate Act, which states that "claims may be filed on or before the date stated in the notice, which date shall not be less than 6 months from the date of the first publication or 3 months from the date of mailing or delivery, whichever is later," and which provides that "any claim not filed on or before that date is barred." 755 ILCS 5/18-3 (West 2016).

¶ 44    Taken together, the effect of these provisions is that the deadline for filing claims against Chuhak was November 11, 2017. The second amended complaint was not filed until over one year later, on January 3, 2019. On appeal, plaintiffs argue that the dismissed claims were nevertheless timely by operation of the relation-back doctrine or, alternatively, under the discovery rule, the exception for fraudulent concealment, and the doctrine of equitable tolling. We address each argument in turn.

¶ 45                          A. The Relation-Back Doctrine

¶ 46    Section 2-616(d) of the Code is a codification of the relation-back doctrine and provides that a cause of action against a person not originally named as a defendant is not time-barred if

(1) "the time prescribed or limited had not expired when the original action was commenced"; (2) the person sought to be added both received notice of the action "within the time that the action might have been brought" and "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her"; and (3) "the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading." 735 ILCS 5/2-616(d) (West 2016). These requirements are identical to those set out in Rule 15(c) of the Federal Rules of Civil Procedure, after which section 2-616(d) was modeled. See *Borchers v. Franciscan Tertiary Province of the Sacred Heart, Inc.*, 2011 IL App (2d) 101257, ¶ 42 (noting that the Illinois legislature amended section 2-616(d) in 2002 to mirror Rule 15(c)). The only one of these requirements Chuhak contends is not met here is that portion of the second requirement providing that it knew or should have known that, but for a mistake concerning the identity of the proper party, plaintiffs would have named the firm as a defendant from the outset.

¶ 47    As both our cases and the federal cases applying Rule 15(c) make clear, it is the objective understanding of the party sought to be added to the action, and not what the plaintiff actually knew or intended when it made those allegations, that controls this inquiry. *Zlatev v. Millette*, 2015 IL App (1st) 143173, ¶ 31. This focus strikes an appropriate balance, courts have noted, between two competing interests. " 'A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose.' " *Id.* ¶ 32 (quoting *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010)). On the other hand, " 'repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.' " *Id.* (quoting *Krupski*, 560 U.S. at 550). As the United States Supreme

Court put it in *Krupski*:

"The question under Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known the identity of [the prospective defendant] as the proper defendant, but whether [that party] knew or should have known that it would have been named as a defendant but for an error. Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known ***, not what the *plaintiff* knew or should have known at the time of filing her original complaint." (Emphases in original.) 560 U.S. at 548.

¶ 48    A classic and straightforward application of the relation-back doctrine is where a plaintiff correctly describes a defendant in a timely filed complaint but mistakenly names the wrong party. For example, although the plaintiff in *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955,¶ 33, made it clear in his initial complaint that he intended to sue the owner and general contractor of a building for negligent construction, he named the wrong corporate entity as the general contractor. Under those circumstances, this court concluded that the real general contractor, having received notice of the suit, was "more than aware that it was the true target of the litigation." *Id.* ¶ 38.

¶ 49    The Supreme Court explained in *Krupski* that the relation-back doctrine can also apply where a plaintiff knew the identity of the putative defendant but was mistaken as to that party's status or role in the conduct alleged in the complaint. 560 U.S. at 549. As the Court explained:

"A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the 'conduct, transaction, or occurrence' giving rise to her claim." *Id.*

In *Krupski*, the face of the complaint reflected that the plaintiff thought that one entity owned,

operated, managed, supervised, and controlled the ship on which she was injured when, in fact, that role was played by a related and similarly named company. The Court found this was a mistake supporting application of the relation-back doctrine.

¶ 50   In reference to whether "mistake," which is the word used in both Rule 15(c) and section 2-616(d), includes a lack of knowledge, the Supreme Court said:

> "[I]t would be error to conflate knowledge of a party's existence with the absence of mistake. A mistake is '[a]n error, misconception, or misunderstanding; an erroneous belief.' Black's Law Dictionary 1092 (9th ed. 2009); see also Webster's Third New International Dictionary 1446 (2002) (defining 'mistake' as 'a misunderstanding of the meaning or implication of something'; 'a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention'; 'an erroneous belief'; or 'a state of mind not in accordance with the facts')." *Id.* at 548-49.

¶ 51   Plaintiffs rely on two decisions of this court expanding on the holding in *Krupski* in reference to a lack of knowledge: *Borchers*, 2011 IL App (2d) 101257, and *Zlatev*, 2015 IL App (1st) 143173. The plaintiff in *Borchers* sued her former employer and certain other "unknown persons," whom she alleged had accessed her private e-mails, for intrusion upon seclusion and violation of the Stored Communications Act. *Borchers*, 2011 IL App (2d) 101257, ¶¶ 19-20. When the plaintiff later learned that her supervisor and his administrative assistant were the ones directly responsible for the conduct she complained of, she sought to add them as defendants. *Id.* ¶¶ 1, 6, 52. Reversing the circuit court's dismissal of those claims as untimely, this court concluded that, for purposes of applying section 2-616(d), the plaintiff's failure to name the two employees as additional defendants was a " 'mistake' derived from her lack of knowledge about the nature of their involvement." *Id.* ¶ 52.

¶ 52    *Zlatev* was before this court on an interlocutory appeal of a certified question. The court answered the following question in the affirmative: " 'Does plaintiff's lack of knowledge regarding the identity of a potentially culpable party constitute mistaken identity under the relation back statute in [section 2-616(d)]?' " *Zlatev*, 2015 IL App (1st) 143173, ¶ 3 (holding that the plaintiff's claims against a new defendant related back to his original allegations that an unidentified party had struck him with a brick during a fight).

¶ 53    There are two problems with plaintiffs' reliance on these cases. First, they have been called into question. In what may be a conflict with our answer to the certified question in *Zlatev*, the Seventh Circuit, construing Rule 15(c) and the seminal Supreme Court decision in *Krupski*, held that a lack of knowledge can only be considered a "mistake" if it leads to the plaintiff taking a "wrong action." The court said, "[b]ased on the full secondary definition cited in [*Krupski*], it is the 'wrong action' stemming from 'inadequate knowledge' that amounts to a mistake." *Herrera v. Cleveland*, 8 F.4th 493, 498-99 (7th Cir. 2021) (quoting *Krupski*, 560 U.S. at 548-49); see also *Salameh v. MTF Club Operations Co.*, No. 21-CV-4080, 2021 WL 4951529, at *4 (N.D. Ill. Oct. 25, 2021) (stating that "the broad reading of 'mistake' taken from some passages in *Zlatev* and *Borchers* misses the critical point: a lack of knowledge can be a mistake only when tied to a 'wrong action' " (quoting *Herrera*, 8 F.4th at 499)); *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (noting that the plaintiff in *Krupski* had not simply lacked information needed to identify the later-added defendant in that case but had made an "actual mistake" regarding the roles played by two entities that were already known to her); *Winzer v. Kaufman County*, 916 F.3d 464, 471 (5th Cir. 2019) (concluding that "[f]ailing to identify individual defendants cannot be characterized as a mistake" (internal quotation marks omitted)). But see *Goodman v. Praxair, Inc.*, 494 F.3d 458, 469-70 (2007) (rejecting a formalistic emphasis on the type of "mistake" made and focusing

instead on whether the newly added defendant received adequate notice or was prejudiced).

¶ 54　Here, plaintiffs never suggest that they made a "mistake" or took a "wrong action" based on inadequate knowledge. Rather, plaintiffs argue, relying on *Borchers* and *Zlatev*, that they are entitled to benefit from the relation-back doctrine because, until they obtained documents in response to their subpoena, they lacked knowledge regarding the full role that Chuhak played in amending their father's trust documents.

¶ 55　The parties have not addressed this apparent discrepancy between our decisions and those of the federal courts construing Rule 15(c). We will not address it either, since it is not necessary to decide this case. Even if we assume, as plaintiffs ask us to, that a lack of knowledge can satisfy the mistake requirement under the relation-back doctrine, the undisputed facts make clear that there was no such lack of knowledge in this case.

¶ 56　Plaintiffs may not have known that, before the 2012 Amended Trust, a corporate fiduciary was named as a cotrustee, but they certainly knew at the time of their initial complaint that under the original 1984 Trust they had been entitled to a large share of their father's assets whereas under the 2012 Amended Trust those assets went to Judith. Plaintiffs insist that it was not until they had reviewed Chuhak's December 24, 2018, response to their subpoena that they "discovered that Chuhak had represented Judith and [William] and had prepared [William]'s 2010, 2011, and 2012 Trust documents." But Mr. Weinstein informed them in January 2017 that he had been their father's estate-planning attorney "since 2010." Plaintiffs also contend that Chuhak "concealed the fact that there were trusts executed by [William] in 2010, 2011, and 2012, that Chuhak prepared, with each trust iteration giving Judith more assets and more control." But they knew in April 2017 that the original trust was executed in September 1984 and that there had been at least one amendment prior to the 2012 Amended Trust.

¶ 57    Although plaintiffs allege that Chuhak refused to give them complete copies of the various trust amendments, they do not explain how the lack of those documents prevented them from asserting their claims against the firm. Their insistence that Chuhak's December 2018 document production was so revelatory that it caused them to consider claims against the firm for the first time is also not borne out by the record. The substantive allegations in the second amended complaint are virtually identical to the allegations included in plaintiffs' first amended complaint, which was filed on April 20, 2018—several weeks before plaintiffs even served Chuhak with a subpoena for records. Plaintiffs alleged there that Judith "brought [William] to Chuhak for the purpose of amending the 1984 Trust," on February 22, 2010, July 11, 2011, and May 27, 2012, and that the amendments made as a result of those meetings were "drafted by Chuhak" and "executed before employees of Chuhak." Unlike in the cases plaintiffs cite, here there was no lack of knowledge or misunderstanding regarding the role Chuhak played that prevented plaintiffs from asserting claims against the firm within the limitations period. Thus, whatever reason plaintiffs had for not naming Chuhak as a defendant within the limitation period, it was not because they were mistaken about the role Chuhak played in Judith's alleged wrongdoing.

¶ 58    Finally, even if we agreed that plaintiffs gained some necessary knowledge about the law firm's role in amending the trust from the documents produced in response to the subpoena, the question remains whether the timely filing of that initial lawsuit put Chuhak on notice that, but for a mistake (or lack of knowledge), the firm would be a defendant in the case. Here, the only timely filed lawsuit was one seeking to set aside William's amended trust. No claim was made for damages against anyone in that pleading, including Judith. Based on plaintiffs' initial complaint, there was simply no reason that a reasonable person in Chuhak's position would think that but for plaintiffs' mistake about Chuhak's role, the firm would have been named as a defendant.

¶ 59    Plaintiffs continue to insist that Chuhak's knowledge of its own wrongdoing was sufficient to put the firm on notice that it would have been made a defendant but for plaintiffs' mistake. The law is clear, however, that for the doctrine to apply, it must be objectively apparent to a putative defendant from the plaintiff's timely allegations not just that the defendant might have liability but also that the plaintiff intended to sue that defendant. *Krupski*, 560 U.S. at 548.

¶ 60    This requirement is well illustrated in *Redmond v. Galvan*, 2022 IL App (1st) 210653, a case decided after this case was argued. The plaintiff in that case, representing his deceased father's estate, sued a hospital for attempting to resuscitate his father in violation of a do-not-resuscitate order. *Id.* ¶¶ 1-3. When the hospital was dismissed because of sovereign immunity, the plaintiff unsuccessfully sought to amend his complaint to include claims against the individual doctors. *Id.* Although the plaintiff agreed that he knew which doctors were involved in the resuscitation before the statutory limitations period had expired, he insisted he did not know at that time which of those doctors had *ordered* the resuscitation and which had simply followed that order. *Id.* ¶ 39. The plaintiff there argued, as plaintiffs here do, that a lack of information regarding the specific role the new defendants played prevented him from naming them within the limitations period.

¶ 61    We concluded that the *Redmond* plaintiff's argument was a creative one but ultimately could not accept it. *Id.* ¶ 40. Noting that our focus had to be "on what the later-added defendant would understand about the plaintiff's intentions when reading the original complaint," we observed that the original complaint in that case made no distinction between doctors who ordered resuscitation and those who did not. *Id.* "[A]bsent some allegation of that nature," we concluded, the doctors "would have no reason to think that their omission as party-defendants in the original complaint was due to anything but a conscious choice by [the] plaintiff." *Id.* ¶ 43. The same is certainly true in this case, where the complaint gave Chuhak no reason to think that their omission

was due to anything other than a choice by plaintiffs to seek invalidation of the trust rather than damages from any defendant.

¶ 62    Finally, we address plaintiffs' argument that Chuhak should be added as a defendant because it initiated probate proceedings on Judith's behalf, even though William's estate was valued at $0. Plaintiffs argue that the firm did this because it knew it might be sued. Chuhak has never attempted to hide the fact that it initiated probate proceedings to shorten the statute of limitations. The firm maintains that it did so not to insulate itself from claims, but as a service to its client Judith, to bring a more rapid closure to all proceedings concerning William's assets.

¶ 63    Chuhak's motivation for initiating probate proceedings is simply irrelevant. Filing a probate case is a legitimate means of curtailing the limitations period for claims against an estate, and section 13-214.3(d) adopts the Probate Act's short timeframe for certain claims made against estate attorneys. See *Poullette v. Silverstein*, 328 Ill. App. 3d 791, 797 (2002) (rejecting a constitutional challenge to section 13-214.3(d) of the Code and noting that its borrowing of the Probate Act's shorter timeframe for the filing of claims "reflects a policy of law intended to balance several different interests," including "the need for closure with respect to matters related to a decedent's estate"). Plaintiffs insist that the firm's employment of this aggressive strategy proves that Chuhak itself expected to be sued. For purposes of the relation-back doctrine, however, what Chuhak believed about its potential exposure to liability is immaterial. What matters is what Chuhak objectively would have believed *plaintiffs intended* based on the timely filed complaint. In that complaint, plaintiffs elected to sue only Judith, the trustee of the trust, and sought the invalidation of the trust as their sole remedy. For the reasons discussed above, we do not agree that Chuhak knew or should have known that but for a mistake of identity (or even a lack of knowledge) plaintiffs would have sued the firm for damages. Plaintiffs' claims against Chuhak simply do not

relate back to their initial, timely filed, complaint.

¶ 64                                    B. Plaintiffs' Alternative Arguments

¶ 65    Plaintiffs alternatively argue that their claims were timely under the discovery rule, the

exception for fraudulent concealment, and the doctrine of equitable tolling. The circuit court

concluded that plaintiffs had forfeited these arguments by making them for the first time in their

motion for reconsideration. Although plaintiffs may not have presented fraudulent concealment as

a distinct basis for the denial of Chuhak's motion to dismiss, they did assert in their opposition to

that motion that until Chuhak was forced to produce documents in response to plaintiffs' subpoena,

the firm had "purposefully withheld information relating to the various trust documents *** in an

attempt to conceal its participation in [Judith]'s scheme and conspiracy." And plaintiffs did

reference the discovery rule, albeit briefly, in their surreply. While Chuhak pointed out that

plaintiffs were making that argument for the first time, the firm did not request a finding of

forfeiture from the circuit court. It instead addressed the argument on the merits in its surresponse.

We are disinclined to find forfeiture under these circumstances and, given that the parties have

briefed these issues on appeal, prefer to address them on the merits. See *Rajcan v. Donald Garvey*

*& Associates, Ltd.*, 347 Ill. App. 3d 403, 409 (2004) (noting that forfeiture "is a limitation on the

parties, not on the jurisdiction of this court, and we may consider an issue not raised in the trial

court if the issue is one of law and is fully briefed by the parties").

¶ 66    Although plaintiffs attempt to merge the two concepts in their appellate brief, the discovery

rule and the exception for fraudulent concealment are distinct legal theories with differing

applications. We address them each separately, in addition to addressing plaintiffs' argument as to

equitable tolling.

¶ 67                                1. The Discovery Rule

¶ 68    Subsections (b) and (c) of section 13-214.3 of the Code generally establish a two-year limitations period and a six-year period of repose for claims brought against attorneys. 735 ILCS 5/13-214.3(b), (c) (West 2016). *DeLuna v. Burciaga*, 223 Ill. 2d 49, 61 (2006). The two-year statute of limitations incorporates the discovery rule, providing that a cause of action does not accrue until the party bringing it "knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2016). The six-year statute of repose contains no such provision because "[a] statute of repose is not tolled by the discovery rule." (Internal quotation marks omitted.) *Doyle v. Hood*, 2018 IL App (2d) 171041, ¶ 21. The effect of a statute of repose is to "extinguish[ ]" a cause of action after a fixed period of time, regardless of a plaintiff's lack of knowledge of his or her cause of action. *DeLuna*, 223 Ill. 2d at 61.

¶ 69    In *Wackrow v. Niemi*, 231 Ill. 2d 418, 427 (2008), our supreme court explained that where a plaintiff's alleged injury does not occur until the death of the individual for whom the attorney provided legal services, section 13-214.3(d) replaces subsections (b) and (c). And because subsection (d), like subsection (c), does not include the discovery rule, it establishes a period of repose. *Id.* In *Wackrow*, as here, letters of office had been issued and the decedent's will had been admitted to probate. *Id.* at 428. The plaintiff could therefore only file her claims against the lawyers in that case within the shorter timeframes established by the Probate Act for filing claims against the estate or contesting the will, whichever was later. *Id.* The court acknowledged that this reading of the statute might "mean that a plaintiff's action [was] barred before she learn[ed] of her injury," but noted that this was always true with a statute of repose. *Id.* at 427. Based on this authority, we agree with Chuhak that the discovery rule has no application here.

¶ 70                                2. Fraudulent Concealment

¶ 71    Plaintiffs' fraudulent concealment argument is similar to their argument that the discovery rule applies, but in addition to showing that they lacked knowledge of the law firm's role in a scheme to disinherit them, plaintiffs must show that the firm concealed key knowledge from them during the limitations period.

¶ 72    Section 13-215 of the Code provides that

"[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13-215 (West 2016).

Because it would be a "gross injustice" to allow a defendant to conceal a cause of action and then benefit from a statute of repose, our supreme court concluded in *DeLuna*, 223 Ill. 2d at 71-72, that this section applies to both statutes of limitation and statutes of repose.

¶ 73    To demonstrate fraudulent concealment here, plaintiffs must show that Chuhak engaged in "affirmative acts or representations designed to prevent discovery of the cause of action or to lull or induce [plaintiffs] into delaying the filing of [their] claim[s]." (Internal quotation marks omitted.) *Rajcan*, 347 Ill. App. 3d at 407. In an attempt to meet this burden, plaintiffs repeatedly point to Chuhak's resistance to the subpoena plaintiffs served on the firm in this case. The subpoena was not issued until after the time for filing a claim against Chuhak had passed, however. As such, resistance to it cannot constitute fraudulent concealment. See *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 18 (2007) (noting that for the fraudulent concealment statute to apply, a plaintiff must have relied to her detriment on acts or representations calculated "to lull or induce [the] claimant into delaying [the] filing of his or her claim, or to prevent [the] claimant from

discovering a claim" in time to assert it); *J.S. Riemer, Inc. v. Village of Orland Hills*, 2013 IL App (1st) 120106, ¶ 44 (noting that a letter "sent after the period of limitations had expired *** could not have influenced [a party's] decision not to bring suit *** within the limitations period").

¶ 74    We agree with plaintiffs that we should also examine Chuhak's conduct during discovery to determine if it is a part of a pattern of concealment going back to plaintiffs' first interactions with the firm, in early 2017. As noted above, Mr. Weinstein provided plaintiffs with a copy of the 2012 Amended Trust on January 19, 2017, and informed them in that first correspondence that he had provided their father with estate planning services since 2010. Plaintiffs' counsel responded on April 11, 2017, demanding, in addition to the 2012 Amendment, the original 1984 Trust, and the first amendment to the trust. Plaintiffs have alleged that Chuhak provided them with certain pages from those documents to demonstrate that William had the right to amend and restate the trust, but that the firm steadfastly refused to provide complete copies of any other trust amendments, either by mail or at a subsequent in-person meeting on April 18, 2017.

¶ 75 What plaintiffs have failed to identify here, however, are any affirmative misrepresentations that were made to them in their early correspondence with Chuhak, at the April 18 meeting, or at any other time. Our supreme court has explained that "mere silence on the part of [a] defendant is insufficient to constitute fraudulent concealment." *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 40. This requirement is actually illustrated by *Rajcan*, 347 Ill. App. 3d 403, which is the primary case that plaintiffs rely on. As in this case, the plaintiffs in *Rajcan* repeatedly asked their father's estate-planning attorney for a copy of his trust agreement during the applicable limitations period. In contrast to this case, the attorney in *Rajcan* falsely assured them each time that he would provide them with one. *Id.* at 408. The court concluded that these false assurances "were *affirmative acts* that could have assuaged

plaintiffs, who might otherwise have been more assertive in attempting to obtain and examine a copy of the trust agreement." (Emphasis added.) *Id.* Unlike the lawyer in *Rajcan*, who arguably lulled the plaintiffs in that case into inaction with false promises that a document would be disclosed to them, by all accounts Chuhak made quite clear from the outset of this case what it was and was not willing to share with plaintiffs.

¶ 76     Plaintiffs argue that no affirmative misstatements are required because Chuhak owed them a fiduciary duty giving rise to a duty to disclose. But it is well settled that, apart from their duty to faithfully administer the estate plan, the attorneys for an estate generally do not owe a fiduciary duty to its beneficiaries. *See* In *re Estate of Lis*, 365 Ill. App. 3d 1, 17 (2006) (collecting cases). Plaintiffs acknowledge this in their reply brief but, citing *DeLuna*, 223 Ill. 2d at 77, argue an exception applies where "the attorney-client relationship's purpose and intent was to benefit or influence the non-client as a third-party." *DeLuna* involved claims against a lawyer representing the plaintiffs' mother's estate in a wrongful death action. Our supreme court held that a fiduciary relationship arose because, as their mother's next of kin, that action was clearly brought for the plaintiffs' benefit. *Id.* at 79. The lawyer not only failed to inform them that he was intentionally filing the lawsuit without a required affidavit from a medical professional in order to test the constitutionality of that requirement, he also affirmatively misled them by telling them the case was going very well when in fact it had been dismissed and the dismissal was upheld on appeal. *Id.* at 80.

¶ 77     *Roppo v. Travelers Commercial Insurance Co.*, 869 F.3d 568, 592-93 (7th Cir. 2017), relied on by Chuhak, emphasizes that the exception in *DeLuna* is an extremely narrow one, particularly where it conflicts with the duty to zealously represent a current client. It must be shown that the third-party is more than an incidental beneficiary—that the lawyer's services were instead

procured specifically for the purpose of benefiting the third party. *Id.*

¶ 78 Finally, as noted above, the information that was required for plaintiffs to bring the malpractice and fraud claims that they ultimately brought against Chuhak appears to have been available to them from the filing of their first complaint. They knew then that the original trust was established for their benefit and that it had been amended to benefit Judith. They knew that the firm was involved in drafting the trust amendments and that it was at Chuhak's office that their father signed the final trust documents when, according to their allegations, he was no longer competent and his signature was forged. At some point plaintiffs learned additional details regarding the timing and content of the various trust amendments, but they have failed to convince us that anything they learned outside of the limitations period was crucial to their claims against Chuhak.

¶ 79                              3. Equitable Tolling

¶ 80 Plaintiffs' final argument is that we should apply the doctrine of equitable tolling to find that their claims against Chuhak are timely. That doctrine "permits a court to excuse a plaintiff's failure to comply with a statute of limitations where because of disability, irremediable lack of information, or other circumstances beyond his control, the plaintiff cannot reasonably be expected to file suit on time." (Internal quotation marks omitted.) *In re Estate of Mondfrans*, 2014 IL App (2d) 130205, ¶ 25.

¶ 81 We agree with Chuhak that this doctrine does not apply here. As we noted in *American Family Mutual Insurance Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶ 33, equitable tolling is rarely applied in Illinois, and only where a plaintiff has been prevented from asserting his or her rights in some extraordinary way. One example of the doctrine's application is *Ralda-Sanden v. Sanden*, 2013 IL App (1st) 121117, ¶ 25, a belated paternity suit where the plaintiff's mother had

26

withheld information concerning the plaintiff's putative father due to his past violent behavior and threats to kill her and her family.

¶ 82   We find no such extraordinary circumstances here. In support of the doctrine's application, plaintiffs again emphasize their efforts to obtain a response from Chuhak to their subpoena and again insist that they could not have known they had claims against the firm until they received that response, an argument that, as discussed above, we find unpersuasive.

¶ 83   We understand plaintiffs' strong feelings that if Chuhak was part of a fraud to disinherit them, it should have liability and that the law firm's aggressive conduct in this case was improper. But "[a] statute of limitations is by definition an arbitrary period after which all claims, including some meritorious ones, will be cut off." *People v. Burris*, 315 Ill. App. 3d 615, 619 (2000) (noting that "[a] statute of limitations mandating the dismissal only of actions that plainly lacked merit would be pointless"). Our system of separation of powers requires that statutory periods of limitation "must not be enlarged by judicial action beyond [their] legislatively intended scope." *Hamil v. Vidal*, 140 Ill. App. 3d 201, 204 (1985). Although we are sympathetic to plaintiffs' arguments, we are bound "to give effect to the statute in question—no matter the result." *Turner v. Nama*, 294 Ill. App. 3d 19, 33 (1997).

¶ 84                              IV. CONCLUSION

¶ 85   For the above reasons, we affirm the circuit court's July 15, 2019, order granting Chuhak's motion to dismiss and conclude that the court did not abuse its discretion when it denied plaintiffs' motion to reconsider that ruling. In light of this holding, we need not address Chuhak's alternative arguments for dismissal based on section 2-615 of the Code (735 ILCS 5/2-615 (West 2016)).

¶ 86   Affirmed.

---

***Dalessandro v. Quinn-Dalessandro*, 2023 IL App (1st) 211119**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CH-14705; the Hon. Caroline Kate Moreland, Judge, presiding. |
| **Attorneys for Appellant:** | Kevin M. Lyons and Stephanie E. Kopalski, of Lyons Law Group, LLC, of Downers Grove, for appellants. |
| **Attorneys for Appellee:** | Michael J. Flaherty and Christopher L. Gallinari, of Flaherty & Youngerman, P.C., of Chicago, for appellee. |