NOTICE
Decision filed 04/10/23. The text of this decision may be changed or corrected prior to the filing of a Petiion for Rehearing or the disposition of the same.

2023 IL App (5th) 220345

NO. 5-22-0345

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE CITY OF DANVILLE, ILLINOIS, an Illinois Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of Vermilion County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-MR-371 |
| C.A. COLLINS ENTERPRISES, LLC, | ) ) | Honorable Derek J. Girton, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justices Welch and Barberis concurred in the judgment and opinion.

**OPINION**

¶ 1    In this matter, the defendant, C.A. Collins Enterprises, LLC (LLC), appeals (1) the February 17, 2022, "Order Declaring Property Abandoned," wherein the circuit court of Vermilion County found the property, commonly known as "Bresee Tower" (Tower), abandoned pursuant to section 11-31-1(d) of the Illinois Municipal Code (Code) (65 ILCS 5/11-31-1(d) (West 2020)), and (2) the May 26, 2022, "Order Directing Issuance of Judicial Deed," wherein the circuit court issued a judicial deed to the plaintiff, the City of Danville, Illinois (City), transferring title of the Tower from the LLC to the City. On appeal, the LLC challenges whether there was a legal basis for the circuit court to declare the property abandoned and contests whether there was a legal basis for the circuit court's issuance of a judicial deed to the City.

1

¶ 2                                    I. BACKGROUND

¶ 3     On October 11, 2017, the City filed a three-count complaint seeking, *inter alia*, a declaration from the circuit court approving demolition of the Tower. The Tower is an historic building, well known in the community, which was constructed over 100 years ago and has a decorative terra cotta façade, but which has fallen into disrepair. It is not disputed that the Tower has not regularly been used for typical commercial business in some time, and its only claimed ongoing commercial use has been that it houses cellular antennas on its rooftop pursuant to a lease agreement with Nextel WIP Lease Corp. (Nextel) and T-Mobile US, Inc. (T-Mobile).

¶ 4     Count I of the complaint sought to have the Tower declared abandoned, pursuant to subsection (d) of section 11-31-1 of the Illinois Municipal Code (*id.*). Count II sought an order of remediation or demolition under subsection (a) of section 11-31-1 of the Code (*id.* § 11-31-1(a)). Count III sought a finding that the Tower was in violation of sections of the International Property Maintenance Code. Following some initial filings in the case, little to no movement occurred in the matter for approximately three years from August 2018 to October 2021.

¶ 5     There is some dispute as to when the LLC became an owner of the Tower, whether partially or fully, during the years following the 2017 filing of the lawsuit. However, the LLC was not a party to the original complaint and was not named as a defendant until December 2021, when the City filed its second amended complaint approximately four years after its first complaint was filed. In addition to the LLC being named as a defendant, Christopher Collins, managing member of the LLC, and his wife, Jeri Collins, were also named individually as defendants. The LLC, along with Christopher Collins and Jeri Collins, as individuals, were served with the second amended complaint on January 5, 2022, through the LLC's registered agent located in Texas. Additionally,

2

Nextel and T-Mobile were served as defendants due to their cellular antennas being housed on the property.

¶ 6     On February 9, 2022, 35 days after service on the LLC, the City filed a motion to have the Tower declared abandoned, pursuant to subsection (d) of section 11-31-1 of the Code (subsection (d)). In other words, the City chose to move forward on count I of the second amended complaint, leaving in abeyance counts II and III. The City filed two affidavits in support of the motion on February 14, 2022, only two days prior to the February 16, 2022, hearing date set on the motion. These affidavits addressed the value of the property and the estimated costs to repair the Tower. Nowhere within the second amended complaint, the City's motion to declare property abandoned, or either of the two affidavits did the City state or allege that the Tower had been tax delinquent for two or more years or that bills for water service for the property were outstanding for two or more years.

¶ 7     On February 16, 2022, 42 days after the LLC was served with the lawsuit and only 7 days following the filing of the motion to declare the property abandoned, the circuit court held a hearing on the City's motion to declare the Tower abandoned. Prior to this hearing, the LLC did not file an answer to either the second amended complaint or the motion to declare the property abandoned. Appearing at the hearing were Joseph Chamley, James Simon, and Amanda Mank, attorneys for the City; the mayor of the City of Danville, Rickey Williams; Rodney Lewis, attorney for Nextel and T-Mobile; and Christopher and Jeri Collins, *pro se*. Christopher Collins and Jeri Collins appeared, as they were named individually as defendants in the lawsuit. No attorney appeared on behalf of the LLC.

¶ 8    Initially, after the circuit court asked if the parties were ready to proceed, the following relevant exchange occurred between Christopher Collins, managing member of the LLC, also named individually in the lawsuit, and the circuit court:

> "MR. COLLINS: Sir, I have just one thing to bring up and that is I spoke to Mr. Ch—, Chamley out in the hallway and he just told me out there that an 'LLC' must be represented in court by an attorney. We didn't find out about this until Friday afternoon. So the attorneys have, you know, they—they don't have any defense for us other than I can just show the building is not abandoned.
>
> Uh, so what I was gonna ask is would it be okay if I call my attorney to see if he can get on—on the, uh, call here—
>
> THE COURT: Well, I mean I guess what you're asking is you're asking to continue the matter so you can hire counsel—
>
> MR. COLLINS: Yes, sir.
>
> THE COURT:—or have an attorney appear?
>
> MR. COLLINS: Yes, sir."

¶ 9    Following this interaction, further questioning by the circuit court occurred wherein Mr. Collins denied receiving notice of the hearing prior to just a few days before the hearing, but acknowledged he was aware of the ongoing lawsuit generally, despite not being a named party. Mr. Collins went on to indicate that he had spoken to counsel, who he planned on hiring and informed the circuit court of that counsel by name, Attorney Neal Smith.

¶ 10    Counsel for Nextel and T-Mobile, Mr. Lewis, also requested that the court allow a continuance, or at least an opportunity for Mr. Collins to hire an attorney to represent the LLC so that it could reply to the motion, especially since the City sought to take the property. Mr. Lewis

4

noted that the defendants only received the motion to have the property declared abandoned six days prior to the hearing date and the affidavits were only filed two days prior to the hearing. He asked for the court to grant a continuance and set a short briefing schedule to allow them to respond and get experts to refute the affidavits submitted by the City. The circuit court stated during the hearing that the defendants had been aware of the litigation for years and, as result, it denied the motion for continuance.

¶ 11    The parties then argued the issue of whether the building was abandoned. Mr. Collins testified that the Tower was not abandoned, as evidenced by its lease agreement with Nextel and T-Mobile, which allows those companies to house cellular antenna equipment on the roof and occupy and access that space. Mr. Collins also testified that he and Jeri Collins, his wife, are using the property to store personal belongings in the building. He also has someone walk the property once or twice a week. He testified that the taxes for the property are paid and that there are no outstanding water service bills. He further testified that he has been attempting to secure investors for the property and to work with the City, but that the City and its mayor were actively interfering with this process because of their desire to have the building torn down. Mr. Collins alleged that a former city council member, present at the hearing, had information regarding those efforts to prevent him from securing investors and could testify to that.

¶ 12    The City responded that the building was vacant and was in severe disrepair. It noted that the LLC had been fined on multiple occasions for building violations and that the defendants had not taken any steps to fix the property. The City alleged that the building had not had water service since 2009 and no gas service since 2008.

¶ 13    After another request from Nextel and T-Mobile's counsel for the court to allow Mr. Collins to obtain counsel to respond on behalf of the LLC, the circuit court ignored the request and

5

granted the City's motion declaring the Tower abandoned. On February 17, 2022, the circuit court entered the "Order Declaring Property Abandoned," which found the property abandoned under both subsection (a) and subsection (d) of the Code, despite the fact that the motion filed by the City only sought the declaration under subsection (d), which was found in count I of the second amended complaint, not under subsection (a), which was found in count II.

¶ 14    Following this order, Mr. Collins hired the same attorney, Mr. Smith, whom he had identified during the abandonment hearing when he asked for a continuance. Mr. Smith filed a limited scope appearance on behalf of the LLC on March 4, 2022. On that same day, Attorney Smith filed a motion to vacate the February 17, 2022, order or, in the alternative, asked the circuit court to reconsider or clarify the order. Attached to that motion to vacate was Mr. Collins's affidavit, attesting that the Tower is not property tax delinquent and that it has no outstanding water service bills. He also attested that there are cellular antennas on the roof of the Tower and that those antennas are located there pursuant to a valid long-term lease agreement. Further, the LLC offered some short-term solutions, such as temporary metal netting, that could possibly be put in place to ensure the safety of the building while investors were sought. In response, the City argued, *inter alia*, that the presence of cellular antennas on top of the property did not prevent it from being declared abandoned because the legal owner did not occupy the premises.

¶ 15    On March 23, 2022, the circuit court held a hearing on the motion to vacate filed by the LLC. Further testimony was given by the parties regarding the various uses of the building, and it was confirmed that the cellular antennas were active and working. The LLC argued that the property could not be declared abandoned under subsection (d) because the Tower was not tax delinquent, because no bills for water service were outstanding, and because the building was not abandoned and was occupied by a tenant.

6

¶ 16    At the end of the hearing, the circuit court declined to vacate the February 17, 2022, order finding the Tower abandoned under subsection (d). In denying the motion to vacate, the circuit court held that the water service being turned off for nearly a decade was "more proof of abandonment then [*sic*] there being a water bill and being delinquent on it for some period of time." Thus, it found that element satisfied. The court then found that nobody "has occupied that building physically, uh, other than cell phone towers on the roof, uh, for, again, nearly decade," and that that satisfied the second requirement under subsection (d). It then noted that there was no real "contest by the [d]efendants that in fact the building *** is in fact dangerous and unsafe." The court did vacate the portions of the order that granted relief or were found pursuant to subsection (a), as such relief was not requested in the City's motion to declare the property abandoned. The circuit court subsequently entered a written order on April 5, 2022, revising the abandonment order to be pursuant only to subsection (d).

¶ 17    On May 11, 2022, the City filed a petition for judicial deed. In that petition, the City stated that it had complied with all the requirements of subsection (d) and asked for title to the Tower to be transferred to the City by judicial deed. At the hearing on the petition, the same arguments as previously stated were made by the parties. The circuit court then granted the City's petition and entered an "Order Directing Issuance of Judicial Deed." The circuit court authorized the documents transferring the Tower to the City.

¶ 18    The order directing issuance of judicial deed included the language required pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), which made the order final and appealable. This subsequent timely appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    There are two issues raised on appeal. First, whether the City properly established all the required elements for a property to be found abandoned under subsection (d). And second, if so, whether the circuit court properly determined that the City was entitled to an issuance of a judicial deed pursuant to subsection (d).

¶ 21    Issues of law and issues of statutory interpretation are reviewed *de novo*. *Valerio v. Moore Landscapes, LLC*, 2021 IL 126139, ¶ 20. Under the *de novo* standard of review, this court conducts an independent analysis of the statute involved and affords no deference to the circuit court. *Watson v. Legacy Healthcare Financial Services, LLC*, 2021 IL App (1st) 210279, ¶ 29. Here, the circuit court interpreted subsection (d), and we therefore apply a *de novo* standard of review.

¶ 22    The relevant portion of section 11-31-1(d) of the Code reads as follows:

        "(d) In addition to any other remedy provided by law, the corporate authorities of any municipality may petition the circuit court to have property declared abandoned under this subsection (d) if:

                (1) the property has been tax delinquent for 2 or more years or bills for water service for the property have been outstanding for 2 or more years;

                (2) the property is unoccupied by persons legally in possession; and

                (3) the property's condition impairs public health, safety, or welfare for reasons specified in the petition." 65 ILCS 5/11-31-1(d) (West Supp. 2021).

¶ 23    The circuit court entered its written order finding the property abandoned on February 17, 2022, following the hearing on the City's motion to declare property abandoned. Within that written order, the circuit court found that the property was abandoned in that:

8

"a. The Property contains an unsafe structure with certain structural damage, making it unfit for occupancy.

b. The Property is unoccupied by persons legally in possession as there is located on the Property a multi-story commercial building of ordinary construction *** which has in the past been used for human occupation but is now and has remained unoccupied for more than ten (10) years;

c. The Property contains a dangerous and unsafe building as the Building, including related accessory buildings or structures located on the Property, are so dilapidated and in such a state of disrepair that they constitute a fire and safety hazard in the surrounding area, are *dangerous, unsafe, or lack ventilation, illumination, sanitary or heating facilities or other essential equipment.* ***

d. There is no water service to the building since 2009.

e. There is no gas service to the building since 2008." (Emphasis in original.)

¶ 24    Before we begin our analysis of the circuit court's decision and its statutory interpretation, we address the City's claim that the LLC failed to file a written response to the second amended complaint or the motion to declare property abandoned.

¶ 25    While no formal filing was made by the LLC prior to the initial hearing on February 16, 2022, Mr. Collins did appear at the hearing and explained that he had just been informed by the City's attorney, Mr. Chamley, that he was required to hire an attorney to represent the LLC and that he could not represent the LLC as the managing member. This is an accurate statement of the law in Illinois—that a corporation must be represented by counsel in legal proceedings. *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 22. However, this is not something that an average person would necessarily be aware of. This was the first appearance required in

9

the lawsuit by the LLC, Mr. Collins, or Ms. Collins. Mr. Collins also informed the circuit court that he had spoken with an attorney, named that attorney as Mr. Neal Smith, and offered to phone Mr. Smith to have him appear. Mr. Collins requested a continuance for the purpose of obtaining counsel and filing a written response to the City's claims. Importantly, this hearing occurred only 42 days after Mr. Collins had been served with summons in this action, only 7 days following the City's filing of its motion to declare property abandoned, which had been filed on February 9, 2022, and only 2 days following the City's filing of its affidavits in support of its motion.

¶ 26    We further note that the City did not properly serve Mr. Collins or Ms. Collins prior to the February 16, 2022, hearing. Mr. and Ms. Collins are named individually in this suit and, thus, service was required to be made in person or at their regular abode. 735 ILCS 5/2-203 (West 2020). The City attempted to serve Mr. and Ms. Collins through the registered agent of the LLC, which is not proper service. Mr. and Ms. Collins's *pro se* appearances potentially waived any issue regarding this service. However, we note this because if the City's attorneys failed to understand this distinction, then it can be easily understood how Mr. Collins would also fail to understand that he could not represent the LLC at the hearing as the managing member.

¶ 27    Despite Mr. Collins's request for a continuance and Nextel and T-Mobile's counsel's request for continuance, the circuit court denied the request. This court has serious concerns regarding the circuit court's decision to deny a continuance to allow Mr. Collins to obtain counsel, especially in a matter wherein the plaintiff was seeking to deprive the defendant of his real estate, something which the United States Constitution specifically protects and requires due process before it can be taken. U.S. Const., amend. XIV, § 1 (the due process clause of the fourteenth amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law"). See *Jones v. Flowers*, 547 U.S. 220, 223 (2006) ("Before a State may take

property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.' " (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950))).

¶ 28    The circuit court's only stated reasoning for denying the request was that Mr. Collins admitted he was aware of the proceedings for some years and had been in discussions with the City regarding the property. However, there is no evidence in this matter that Mr. Collins failed to exercise due diligence in obtaining counsel. As noted above, Mr. Collins and the LLC were not formally named in the lawsuit, and the LLC was not served with notice until January 5, 2022. This was the first request for a continuance at the first hearing in the case since Mr. Collins was named a defendant. Mr. Collins was never properly served prior to the hearing. A party is not required to seek out counsel for representation in a lawsuit wherein it is not a party. The LLC and Mr. Collins should not be penalized for the City's failure to advance its case in a timely fashion since its original filing in 2017. Additionally, the filing of the motion to vacate by the LLC through its attorney, Mr. Smith, just days after the entry of order declaring property abandoned suggests diligence was exercised by Mr. Collins.

¶ 29    The circuit court's decision to move forward, leaving the central corporate defendant, the LLC, unrepresented and forcing a party named in his individual capacity to defend himself *pro se* under such circumstances raises concerns for this court. However, that particular action is not complained of on appeal. To the extent that the City seeks to assert that all of its pleaded allegations must be taken as true because of the LLC's, and Mr. Collins's, failure to file a written response, under these circumstances, we would disagree. We believe that Mr. Collins's presence at the February 16, 2022, hearing, his appearance individually as a named defendant, and his stated assertions therein act as a response to the allegations made by the City. Further, the motion to

11

vacate filed within 30 days following the abandonment order certainly acts as a formal response by the LLC. However, even if we were to consider the City's allegations as stated in the second amended complaint as true, it still would not change the outcome of our disposition.

¶ 30    Turning to the LLC's complaints on appeal, the central contention is that the circuit court erred in declaring the Tower abandoned because the City failed to show all of the elements required to proceed under subsection (d). Particularly, the LLC argues that the City failed to demonstrate that "the property has been tax delinquent for 2 or more years or bills for water service for the property have been outstanding for 2 or more years."

¶ 31    The circuit court, in its order, made no finding regarding the LLC owing any property taxes. Nor does the City argue in this appeal that any property taxes are delinquent. The circuit court made no finding that the LCC had outstanding water service bills. Nor does the City argue that any such outstanding bills exist. Instead, the circuit court found that there had been no water service to the Tower since 2009 and that this fact fulfilled the requirement. The LLC admits that the water service has been turned off to the property since 2009. Therefore, the question before us is whether the LLC's decision to turn off the water to the Tower is sufficient to fulfill the requirement above. We find it is not.

¶ 32    During the hearing, and now on appeal, the City argues that the Tower's lack of water service for over a decade was a greater indicium of abandonment than two or more years of unpaid water bills, and thus, it fulfills the requirement. The circuit court agreed with the City's contention and ruled in the City's favor, using this reasoning. When applying a statute in a lawsuit we are guided by well-settled principles and law regarding statutory construction. "The primary objective of this court when construing the meaning of a statute is to ascertain and give effect to the intent of the legislature." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). "The plain language of a statute

12

is the most reliable indication of the legislature's objectives in enacting that particular law [citation], and when the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation." *Id.*

¶ 33    Here, we find that the plain language of the statute is clear and unambiguous. The requirement of the statute is that "the property has been tax delinquent for 2 or more years or bills for water service for the property have been outstanding for 2 or more years." 65 ILCS 5/11-31-1(d)(1) (West 2020). The legislature could have easily included other requirements as it saw fit, but it did not. "[W]hen the language is plain and unambiguous, courts cannot add exceptions, limitations or otherwise amend or alter a statute, no matter how beneficial or desirable the result." *Ferguson v. Bill Berger Associates, Inc.*, 302 Ill. App. 3d 61, 69 (1998). "Additionally, ordinances enabling the appropriation of private property are in derogation of the common law and thus must be strictly construed." *City of Chicago v. Midland Smelting Co.*, 385 Ill. App. 3d 945, 962 (2008). Therefore, in this matter, because the language is clear, we are bound by that language and cannot read into the statute additional requirements not stated by the legislature.

¶ 34    The City contends that to follow such a strict construction results in an absurdity and defeats the obvious intent of the law. We disagree. To hold that having water turned off to one's property gives grounds for a finding that the property is abandoned raises potential concerns. For example, a municipality's water service being turned off to a property is not conclusive evidence that the property lacks available water. Water service from a municipality is not the only way one can obtain water. First, a well could be dug. Second, water could be hauled or delivered to the property and stored in a cistern. And third, water could be purchased through a commercial water delivery service.

¶ 35    Further, we do not believe that a strict construction results in an absurdity. The City contends that if this court fails to expand the statute's requirement, it will "create[ ] an injustice to citizens and their elected municipal leaders by way of preventing a municipality from efficiently and constitutionally ameliorating blight in the form of abandoned budlings." However, the City's implication that if it is denied the ability to proceed under subsection (d), it is left with no available mechanism to address the potential safety and health issues posed to the public by the Tower is disingenuous. Subsection (a) of the statute at issue sets out a process for municipalities to address concerns where they are unable to meet the requirements set forth under subsection (d). The City is aware of this avenue of relief because it pleaded it in count II of its second amended complaint. Subsection (d) offers an expedited path for cases of true abandonment and is limited in scope as such. Subsection (a) is available precisely for cases where abandonment has not occurred, but the property owner refuses to take proper measures to cure dangerous defects on his or her property.

¶ 36    Because all three requirements set forth in subsection (d) must be demonstrated by the party seeking a declaration of abandonment and, here, the City cannot meet the first requirement, we need not examine the remaining requirements of subsection (d) or the other subsequent determinations made by the circuit court. Because we find that the circuit court erred in finding that the City established all three conditions to have the Tower declared abandoned pursuant to subsection (d), the circuit court's issuance of a judicial deed also pursuant to subsection (d) was necessarily also in error.

¶ 37                                III. CONCLUSION

¶ 38    For the foregoing reasons, we reverse the circuit court of Vermilion County's February 17, 2022, "Order Declaring Property Abandoned." We also reverse its May 26, 2022, "Order Directing

14

Issuance of Judicial Deed." We void and/or strike the judicial deed and all subsequent notices and recordings of judicial deed. We remand for further proceedings on counts II and III.

¶ 39    Reversed and remanded.

*City of Danville v. C.A. Collins Enterprises, LLC*, 2023 IL App (5th) 220345

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Vermilion County, No. 17-MR-371; the Hon. Derek J. Girton, Judge, presiding. |
| **Attorneys for Appellant:** | M. Neal Smith, of Robbins Schwartz Nicholas Lifton & Taylor, Ltd., of Lisle, for appellant. |
| **Attorneys for Appellee:** | Joseph P. Chamley, of Evans, Froehlich, Beth & Chamley, of Champaign, for appellee. |